LESSEE OF JAMES P. MERRITT *v.* DANIEL H. HORNE.

An actual seizin of the land of the wife during coverture, is not necessary to entitle the husband to curtesy in this State. The case of *Borland's Lessee* v. *Marshall*, 2 Ohio State Rep. 308, followed and approved.

By the partition act of 1820, (2 Chase Stat. 1162,) the guardian of an infant was authorized to appear for his ward and consent that partition be made.

The finding of the court, that the person assuming to act as guardian, was in fact such, is sufficient, *prima facie*, to show that the court had obtained jurisdiction over the ward.

If, upon sale of the land under such a proceeding, the husband of the infant, acting as her guardian, with a full knowledge of the facts, acknowledges such person to have been guardian, and receives from him as such the consideration money for the property, he will be estopped to prove that such person was not duly appointed ; and cannot, after the death of the wife, controvert the jurisdiction of the court over the infant.

The estoppel is equally effectual at law and in chancery.

A deed of conveyance from the sheriff, duly executed, was by that act necessary to a complete execution of the power, and indispensable to invest the purchaser with the legal title.

An instrument of writing duly acknowledged, but without being sealed by the sheriff, is insufficient ; and the addition of a seal many years after, without another acknowledgment, will not make it available, in a court of law, to protect the purchaser in an action of ejectment brought by the infant, or one who has succeeded to her estate.

IN error to the District Court of Hamilton county.

The original action was ejectment, brought by the plaintiff against the defendant, and was, on appeal, tried in the district court of Hamilton county, at the April term, 1854, and resulted in a judgment for the defendant.

The present proceeding is to inquire whether, under the state of facts presented by the record, the judgment of the district court was right.

The facts are substantially as follows :

John Dunseth died intestate in the year 1827, seized of the one undivided fourth part of certain lands in the record named, leaving Margaret and David his only children and heirs at law.

In November of that year, the mother was appointed guardian for her children, Margaret then being twelve years old.

In May, 1829, the mother died, leaving her will, dated 21st April, 1829.  By this will, she requested Daniel H. Horne to become the guardian of her children.  He consented, and did act as such ; but he was never chosen or appointed by the court the guardian of either Margaret or David ; nor did he ever enter into bonds as such guardian ; or, if he ever was so chosen or appointed, there is no minute entry of such choice or appointment.

In 1827, Daniel H. Horne and James Patterson purchased an undivided fourth part of the same premises ; and, in 1829, said

Horne and Andrew W. Patterson, the brother of James, purchased a like interest therein.

After this, in 1829, Stephen Johnson and wife, who owned the remaining undivided fourth part of said premises, filed a petition for partition, making the other parties in interest above named defendants thereto.  Upon this petition a summons issued, and was returned served upon the Pattersons and Horne, and said Horne as the guardian for minor heirs.  Thereupon the defendants answer; the said Margaret and David, by Daniel H. Horne, their guardian, waive notice, and consent to the prayer of said petition, stating the interests held by each.  Thereupon a decree was entered, finding process had been served, and that defendants had appeared and consented to partition, and that said Horne, " who is legally appointed guardian of the said Margaret Dunseth and David Dunseth, who are minors and heirs of John Dunseth deceased, also having appeared in open court and consented to the partition of said lands on behalf of his wards ; " and the court being satisfied said partition should be made, ordered a writ of partition to issue.  Thereupon a writ of partition issued, and said premises, not being divisible, were appraised at $11,400. And thereupon the court confirmed said appraisement, and no one of the parties electing to take said premises at the appraised value, the court ordered the same to be sold under the statute, etc.  An order of sale issued, and said premises were sold on the 16th October, 1829, at public auction, to Andrew W. Patterson, who purchased for himself and his brother, for $11,500, cash paid, and afterward let Mr. Horne in for half the purchase.  The sale was confirmed and a deed ordered.  In pursuance of said order, the sheriff executed and delivered to the purchaser his deed, dated 24th November, 1829, but omitted to put his seal to it, though he stated in the attesting clause that his hand and seal were set to said deed.  In 1847, after the sheriff went out of office, a seal was affixed to said deed.  After the sale and deed, and since, possession has been held under them by the purchaser and those claiming under him.

On 3d February, 1833, James P. Merritt, the lessor of the plaintiff, married the said Margaret Dunseth, by whom he had a

child, Mary Adelia. Margaret died in 1835, leaving her child about eighteen months old. Mary Adelia died in 1838, leaving the said David Dunseth her heir at law.

On 23d January, 1833, Daniel H. Horne, as the guardian of the said Margaret Dunseth, filed his account as such with the court, showing a balance due his ward of $1,081.78. In it he charges himself, on 4th November, 1829, with $1,466.13, received from the sheriff, proceeds of sale of said property, less costs on said partition proceedings.

On 23d March, 1833, Margaret Dunseth, aged 17 years, August then last past, chose her husband, James P. Merritt, the lessor of plaintiff, her guardian, who was thereupon appointed her guardian, having given his bond in $2,000, with David Griffin, as surety. Afterwards, on 25th March, 1833, James P. Merritt, as guardian of his wife, gave to said Horne, on settlement in full, a receipt as follows, to wit:

"$1,081.78. Received of Daniel H. Horne, heretofore appointed by the court of common pleas, of Hamilton county, guardian of the person and estate of Margaret Dunseth, child and heir of John Dunseth, deceased, the said Margaret Dunseth having since intermarried with me, the sum of one thousand and eighty-one dollars and seventy-eight cents, being the balance in the hands of the said Daniel H. Horne, arising from the real and personal property, which have come to the hands of said Horne as guardian, to which said Margaret is entitled. And I hereby, after full examination, approve of said balance, and release and exonerate said Horne from any further claim on the part of said Margaret, for any matter or thing arising from his duties as guardian as aforesaid. Witness my hand and seal this 25th day of March, Anno Domini 1833.

"JAMES P. MERRITT, (Guardian of Margaret
Merritt, *late* Margaret Dunseth),        [SEAL.]

"Signed and sealed in presence of
BELLAMY STORER."

On the 2d of September, 1847, Daniel H. Horne obtained a quit-claim deed from David Dunseth, and Margaret (late Johnson) Kirby, and her husband, who had brought suit, but made an amicable settlement of their claim.

Upon the facts above stated, the court below gave judgment against Merritt's claim to curtesy in said land, and this proceeding to review that decision, presents the following questions:

Lessee of Merritt *v.* Horne.

1st. Does the fact that there was no actual seizin during coverture, bar Merritt from curtesy in the land?

2d. In the partition proceedings did the court obtain jurisdiction over the infant Margaret, afterwards Merritt's wife?

3d. Is Merritt, by the receipt of March 25th, 1833, estopped to deny that Horne was guardian, or that the court had obtained such jurisdiction?

4th. If the partition proceedings and sale were valid, are they, without a deed, or with a deed in conformity with them, but without a seal, sufficient to protect the defendant holding under the purchase, in an ejectment by Merritt, who sues for curtesy in the land?

5th. If not, did the seal afterward affixed to the deed, cure the original defect in that respect?

*J. H. Jones* and *J. B. Eaton,* for plaintiff, made the following points:

I. Seizin in fact, or deed, as at common law, is not necessary to sustain the tenancy by curtesy in Ohio. 2 Ohio St. Rep. 308; 3 Ohio St. Rep. 388.

II. The proceedings in partition were invalid.

1. The court, in the matter of the partition of real estate, is exercising a limited statutory jurisdiction, and its record must show a substantial conformity to the requirements of the statute, by which only it acquires jurisdiction of the subject, and by the provisions of which its jurisdiction is limited. 3 Ohio Rep. 553; 5 Ib. 371; 18 Ib. 231—541; 2 Howard 60; 3 Ib. 751; 1 Peters 340—546; 13 Ib. 511; 19 Johns. 328; 2 Dana 272; 2 Ohio St. Rep. 368.

2. The statute of February 26, 1820, under which these proceedings took place, does not direct or contemplate the general partition of the whole estate, but only the dividing and setting off to the petitioner or petitioners, his or their portion of the estate. 2 Chase's Stat. 1162.

3. The petition in the case is fatally defective, and conferred upon the court no jurisdiction over the subject matter. 2 Chase's Stat. 1162, sec. 2, 3.

4. The court obtained no jurisdiction over Margaret Dunseth, or her property, by the appearance and action of D. H. Horne, as her guardian, or otherwise.   20 Ohio Rep. 327 ; 11 Ib. 442 ; 2 Ib. 451.

5. The court could not proceed to issue a writ of partition under the statute, until it had found the portion of the estate belonging to the " demandant," and ordered partition accordingly. 2 Chase's Stat. 1102, 4.

6. Without the previous issue of a writ of partition, and the return of the commissioners thereon, that the property could not be divided *according to the command of the writ*, without injuring or spoiling the whole, the court had no authority to order a sale of the property, and its order was void.   2 Ohio State Rep. 368.

III.   The receipt for $1,081.78 from Horne to Merritt, March 25th, 1833, does not estop Merritt to claim curtesy in the estate in question, if the wife was seized during coverture.   4 Dana 251 ; 18 Johns. 490 ; 7 Texas 288.

3. As to seizin.

IV.   The sheriff's deed had no seal affixed, and therefore had no validity to pass the title.   4 Cruise 28 ; 14 N. H. Rep. 393 ; 7 Conn Rep. 542 ; 1 Marshall 587.

*Worthington & Matthews*, for defendant, made the following points :

1. As to curtesy.

I.   By the ordinance of 1787, *estates* are transmitted by de scent.   Dower is preserved, but not so as to curtesy.   Swan's Stat. 1841, p. 42.

II.   By the ordinance of 1787, our courts had common law jurisdiction, and all judicial proceedings were according to the course of the common law.   Swan's Stat. 1841, p. 43 ; Ib. p. 46, Art. 2.

III.   The act of 22d February, 1805, regulating descents, and taking effect from its passage, operated upon the *title* and transmitted it, but saved *curtesy* and dower from its operation. 1 Chase's Stat. 515.

IV.   1. The act of 14th February, 1805, declaring what laws should be in force, adopts the common law.   It took effect 1st June, 1805, and repealed the act of 14th July, 1795, (1 Chase's Stat. 190,) adopting the common law.   1 Chase's Stat. 512.

2. How far the common law and statutes in aid of it are in force in Ohio, has been well considered by our courts; and it is plain the common law is the rule of property, except as modified by statute so far as applicable.   17 Ohio Rep. 449.

V.   The repealing act of 2d January, 1806, repeals the act of 14th February, 1805, as to the common law.   1 Chase's Stat. 528.

VI.   The act of 30th December, 1815, regulating descents, saves *curtesy* and dower, operates upon the *title*, and repeals the act of 22d February, 1805.   2 Chase's Stat. 906, sec 1, 13.

VII.   The act of 11th February, 1824, regulating descents, saves *curtesy* and dower, operates upon the *title*, and repeals the act of 30th December, 1815.   2 Chase's Stat. 1313, sec. 1, 15.

VIII.   The act of 24th February, 1831, and 7th March, 1835, regulating descents, saves *curtesy* and dower, operates upon the *title*, and repeals the act of 11th February, 1834. Swan's Stat. 286, sec. 1; 288, sec. 15.

IX.   If a tenant by curtesy seized of land, fail to pay taxes, his estate will be forfeited.   Swan's Stat. 1841, 926, sec. 66; act of 12th Feb. 1841; 2 Chase's Stat. 1368, sec. 14; act of 25th Feb., 1824; 5 Ohio Rep. 30.

X.   In Ohio, entry not tolled upon a descent cast, because the descent operates upon the title, and not upon the seizin of the ancestor.   In the case of unoccupied or wild lands, the possession or seizin follows the title.   3 Ohio Rep. 237; 3 Cranch Rep. 244; 3 Con. Pet. Rep. 103; 5 Ib. 218; 1 Munford Rep. 162.

XI.   In the case of *Lowry's Lessee* v. *Phillips and Steele,* to entitle the husband to curtesy, in Ohio, *seizin in deed,* during coverture, was held to be necessary, either absolute or constructive; and *seizin in law* was held to be not enough.   4 Ohio Rep. 170.

XII.   In England, a tenant by the curtesy is where a man marries a woman seized of lands during coverture, and has by

her issue born alive, that will inherit said lands. The seizin must be actual if in livery, or constructive if in grant; or where by legal contemplation, the seizin follows the title as in vacant or wild lands. 2 Ohio St. Rep. 308; 2 Black. Com. 126; 1 Thomas Coke 556; 2 Woodeson's Lec. 18; 1 Bacon Abridg. 659—662; 1 Pet. Rep. 506; 1 Sumner Rep. 263; 1 Howard Rep. 37; 4 Kent Com. 29; 8 John. Rep. 202; 5 Cowen Rep. 97; 8 Paige Rep. 645; 10 Barbour Rep. 388; 7 B. Monroe Rep. 401; 13 Alabama Rep. 793; 1 New Jersey Rep. 525; 3 Con. Pet. Rep. 103.

XIII. The tenancy by curtesy, if not of feudal origin, was engrafted on feuds in England as early as Henry I; and as early as Henry III, when introduced into Ireland, seizin 'was a fixed item in curtesy; not because it was necessary to protect the inheritance to the issue of the marriage, but because the tenant held by a tenure, that made it his duty to pay homage, etc., to the lord paramount. 2 Black. Com. 126; 1 Bac. Abridg. 659—662; 1 Thomas Coke 556; 1 Sumner Rep. 263.

XIV. It is true, by the common law, *seisina facit strpitem*, or the heir connects by blood with the last person seized, and, therefore, to make the issue of the marriage heir of the mother, she must have had seizin of an estate that descends to the issue; and to give curtesy, this seizin must be during coverture. Seizin is an incident both to heirship and curtesy, but not the sequence of the one to the other. 2 Black. Com. 126; 2 Bacon Abridg. 662; 1 Thomas Coke 556; 1 Sumner Rep. 263.

XV. By the feudal law, the freehold could not be vacant, and he in actual or constructive possession was required to perform the feudal duties. The lord paramount sought his rights through the tenure by which his lands were held under him. 2 Black. Com. 168, note 9.

XVI. In Connecticut and Pennsylvania, it is held that seizin in law is all that is necessary, because their system only operated upon the title, and not upon the seizin. Their limitation acts operated upon the title, and not upon the seizin. Their law of descents also, and so as to wills; while the rule in England in all operated upon the seizin. They make curtesy a sequence of de-

scents. 4 Day Rep. 298; 6 Conn. Rep. 499; 5 Rawle Rep. 161; 8 Serg. & Rawle Rep. 175.

XVII. In *Borland's Lessee* v. *Marshal,* the Supreme Court of Ohio, without adverting to our legislation upon the subject of curtesy, and its adoption into our system as understood in England, and without adverting to the fact, that since adopted there had been no legislative change in the elements that constitute the estate, followed the ruling in Connecticut. 2 Ohio State Rep. 308.

XVIII. In New York and other States, it is held curtesy exists in wild lands, because there is no adverse seizin; but if there were an adverse seizin, then otherwise, because the seizin follows the title. 8 John. Rep. 202; 5 Cowen Rep. 97; 8 Paige Rep. 645; 10 Barbour Rep. 388; 1 Pet. Rep. 506; 7 Howard Rep. 37; 1 Sumner Rep. 363; 1 New Jersey Rep. 525; 7 B. Monroe Rep. 401; 13 Alabama 793.

XIX. Seizin is actual or constructive posession. 2 Black. Com. 311; 3 Thomas Coke, 273; 2 Ib. 334, note c; 2 Ib. 460, note o.

XX. The possession of a tenant is adverse to that of his landlord, when he disavows to him his tenancy, or claims to his knowledge adverse to him. When Patterson purchased under the partition proceedings he became an adverse holder of the title. 3 Pet. Rep. 57.

XXI. In Ohio, dower, curtesy, devises, descents, guardians', administrators', executors' and sheriffs' sales and grants of land are domestic institutions, created, defined, and regulated exclusively by statute. Under the territorial government in Ohio curtesy did not exist until the act of 14th July, 1795, declaring what laws were in force. It was first recognized in terms by the statute of descents of 1805, and saved from its operation as an existing estate, when the common law was in force by special legislation.

2. The effect of the partition proceedings.

XXII. Under the partition acts of 26th Feb., 1820, etc., under which the proceedings in question were had, it was com-

petent for a guardian to act for his ward in all things authorized by them.　2 Chase's Stat. 1162 ; 3 Chase's Stat. 1621.

XXIII.　Upon the return of process served, the court obtained jurisdiction over the subject matter and the parties, and by its decree found that Mr. Horne was the guardian of Margaret Dunseth, and that decree is conclusive until reversed.　3 Ohio State Rep. 494 ; 2 Ib. 30 ; 9 Ohio Rep. 120 ; 11 Ib. 422 ; 17 Ib. 423 ; 15 Ib. 443 ; 20 Ib. 468 ; 6 Ib. 535 ; 9 Howard's Rep. 336 ; 12 Peters' Rep. 718.

XXIV.　The decree of the court *per se* constituted Mr. Horne *pro hac vice* guardian for the minor defendants, and it was competent for the court so to constitute him to act in that particular case.

XXV.　1. The decrees in partition are conclusive upon the rights of the parties, notwithstanding the supposed defective execution of the sheriff's deed.　By the statute, when the sale was confirmed, their rights were transferred from the land to the proceeds of sale.　3 Ohio Rep. 326 ; 5 Barr Rep. 428 ; 8 Ib. 396 ; 7 Humphrey Rep. 507 ; 1 Greenleaf Rep. 369 ; 13 Alabama Rep. 647 ; 2 Chase's Stat. 1162, sec. 6.

2. Under the statute the sheriff's deed was acknowledged in open court as a part of the proceeding in partition.　17 Ohio Rep. 439.

XXVI.　In ejectment the lessor having the mere naked legal title can not recover, unless he also has the right to the possession.　6 Pet. Rep. 441 ; 12 Howard Rep. 380 ; 13 Ib. 477 ; 15 Ohio Rep. 408 ; Ib. 429 ; 16 Ib. 488 ; 3 Barb. Rep. 576.

3. Sheriff's deeds in partition.

XXVII.　The partition acts require the sale to be confirmed by the court, and a deed to be executed and delivered by the sheriff who made the sale.　Under the act of 1820, it must be acknowledged in open court.　Under the act of 1831, as other deeds.　Under the act of 1836, the court can order a deed to be executed by the successor of the officer who made the sale, being satisfied the sale was regular and money paid or secured.　This does not apply to cases where the sales have been approved, but

where no such approval has been had. Prior to this act no such order could be made. 2 Chase's Stat. 1162, sec. 6 ; Swan's Rev. Stat., p. 592, sec. 10 ; Ib. 593, sec. 1.

XXVIII. The omission of a scrawl is a mere clerical error, which can be corrected at any time, especially when a mere matter of inadvertence. 10 Ohio Rep. 312; 7 Ib., pt. 1, 68 ; 15 Ib. 425.

4. The settlement of 25th March, 1833.

XXIX. The settlement between Mr. Horne, as guardian, and Mr. Merritt, as the husband and guardian of his wife, concludes him as to the land sold. 11 Ohio Rep. 422 ; Ib. 423 ; 14 Ib. 239 ; 16 John. Rep. 314 ; 8 Metc. Rep. 196 ; 2 Ohio State Rep. 515.

XXX. A party is estopped by his own act. He can not claim for and against his own same act. 8 Ohio Rep. 529 ; 2 Ib. 510 ; 5 Ib. 197, 254, 434 ; 7 Ib., pt. 1, 59 ; 1 Ohio State Rep. 422; 2 Ib. 215 ; 6 Hill Rep. 536 ; 3 Dana Rep. 349 ; 11 Howard Rep. 325.

XXXI. When one by his acts or words intentionally causes another to believe in a certain state of things, and thereby induces him to act on that belief so as to injuriously affect his previous position, he is precluded from asserting a different state of things at a different time. 1 Selden Rep. 394 ; 12 Barb. Rep. 128 ; 8 Gill Rep. 239 ; 21 Conn. Rep. 467; 18 Ib. 403 ; 17 Ib. 345, 355.

RANNEY, C. J. In deciding this case, I shall do no more than state the conclusions to which the court have arrived, upon the several questions presented. It has been fully and ably argued by counsel, and the ground upon which these conclusions are based, and their application to the facts, will be made apparent by the publication of a synopsis of those arguments.

We have again carefully examined the doctrine announced in *Borland's Lessee* v. *Marshal*, 2 Ohio St. Rep. 308, that an actual seizin of the land of the wife during coverture, is not necessary to

entitle the husband to curtesy in this State ; and are fully satisfied of its correctness.

By the partition act of 1820, (2 Chase's Stat. 1162,) the guardian of an infant was authorized to appear for his ward and to consent that partition be made ; and it is expressly declared that " the same shall be deemed as valid and effectual in law to every intent and purpose, as if the same had been done by such minor after his arrival at full age."

In this, as in all other judicial proceedings of a court of record of competent jurisdiction, the record imports absolute verity ; and the finding of such a court, that the person assuming to act as guardian was in fact such, is sufficient *prima facie* to show that the court had obtained jurisdiction over the ward.

If upon the report of an inquest that the property will not divide, and the consequent sale of the land under such a proceeding, the husband of the infant, acting as her guardian, with a full knowledge of the facts, acknowledges such person to have been guardian, and receives from him as such the consideration money for the property, he will be estopped to prove that such person was not duly appointed, and cannot, after the death of the wife, controvert the jurisdiction of the court over the infant.

There is now no principle better settled, or resting upon firmer grounds of justice and public policy, than that which precludes a party who has induced another to part with his money or property, and has taken the fruits of a judicial proceeding, from afterwards questioning its regularity, or, by evidence *aliunde*, impairing its effect. *Lessee of Buckingham* v. *Hanna*, 2 Ohio State Rep. 559 ; *Tabler* v. *Wiseman*, Ib. 216. Although this doctrine debars the truth in the particular case, yet, as said by the Supreme Court of the United States in *Van Rensselaer* v. *Kearney*, 11 How. 326, " it imposes silence on the party, only when, in conscience and honesty, he should not be allowed to speak." And we are of the opinion that it is equally effectual at law and in chancery.

By the act to which reference has been made, in case of a sale of the property upon proceedings in partition, a deed of conveyance from the sheriff, duly executed, was made necessary to a

complete execution of the power, and indispensable to invest the purchaser with the legal title. The deed required, must have been signed and *sealed* by the sheriff in the presence of witnesses, and such signing and *sealing* acknowledged by him in open court. An instrument of writing duly acknowledged, but without being sealed by the sheriff, is insufficient; and the addition of a seal many years after, without another acknowledgment, will not make it available, in a court of law, to protect the purchaser in an action of ejectment brought by the infant, or one who has succeeded to her estate.

*Judgment reversed, and cause remanded.*