IN RE McTAGGART, A MINOR.

[Cite as In re McTaggart, 4 Ohio App. 2d 359.]

(No. 26985—Decided December 16, 1965.)

*Mr. Hyman J. Blum,* for appellant, Carmeline McTaggart.
*Mr. Morris Berick, Mr. Philip R. Bradley, Mr. Max B. Katz* and *Mr. Joseph D. Bryan,* for appellees, Gerald Sherwin and Sandra Sherwin.

KOVACHY, P. J.   A rehearing* having been granted in this case, the cause has been argued anew with new issues and new questions of law presented.

A young married woman found herself in the desperate situation of giving birth to a child out of wedlock and instituted proceedings with the Probate Court of Franklin County pursuant to which the child was placed with a married couple within a day or two of birth with adoption in mind.   The mother, within a week or two thereafter, had a change of heart in the matter.   She went to the referee of the Probate Court to report that she wanted her baby back, and then filed a petition in habeas corpus in the Court of Common Pleas of Cuyahoga County, the home of the adoptive parents, to regain custody of her baby. The Court of Common Pleas found that it had jurisdiction to entertain the application, that the Franklin County Probate Court did not have jurisdiction to approve the placement of the minor child and that it was in the best interests of the child "to refuse the writ applied for."   An appeal from the judgment by the relator is here before us on questions of law.

This is, unfortunately, an unhappy situation which the courts cannot remedy because it will be tragic to the mother if she does not recover her baby girl as it will be devastating to the adoptive parents if they are now forced to give up a child whom they look upon and love as their own.

The Probate Court of Franklin County, under the statutes dealing with adoption, had exclusive jurisdiction to entertain

*In re McTaggart,* 2 Ohio App. 2d 214.

and determine the cause presented to it by the mother of Baby McTaggart.

The Supreme Court of Ohio, in *In re Adoption of Biddle*, 168 Ohio St. 209, states the law with respect to adoption proceedings, in the syllabus, as follows:

"1. Jurisdiction over adoption proceedings is vested *exclusively* in the Probate Court by the provisions of Section 3107.-02, Revised Code." (Emphasis added.)

Moreover, it is admitted that in this case the Probate Court had complete jurisdiction over the parties and subject matter of the adoption proceedings instituted therein. The lone question, therefore, before the trial court in the habeas corpus action was whether the proceedings which only covered a preliminary stage of adoption in the Probate Court, namely, the placement of the child with the adoptive parents, were for any reason void, depriving that court of jurisdiction in the matter.

25 American Jurisprudence 159, Habeas Corpus, Section 26, states:

"The primary and, ordinarily, the only question involved in habeas corpus proceedings is one of jurisdiction—namely, whether the particular order, judgment, or process whose validity is attacked is one coming within the lawful authority of the court or officer making or issuing it. * * *."

It is further stated in the same volume, commencing at page 184, Habeas Corpus, Section 55:

"Where the aid of a writ of habeas corpus is sought to secure the discharge of one who is restrained of his liberty by virtue of a judgment, the proceeding is a collateral attack of a civil nature upon the validity of the judgment and so is governed by the general rules applicable to collateral assaults upon judgments. It follows that the writ lies where the jurisdiction attacked is absolutely void, and only where this is the case. * * *."

The trial court found "that the Franklin County Probate Court did not have jurisdiction to approve placement of said minor with said respondents." In its opinion the court determined that the application filed by Mrs. McTaggart in the Probate Court did not meet the requirements of Section 5103.16 of the Revised Code, the statute under which the adoption proceedings were inaugurated. The trial court, in particular, held

362

that the expression *"the proposed placement specified in such application"* meant that the applicant is required to *identify by name* the persons with whom the child was proposed to be placed and that failure so to do by Mrs. McTaggart rendered the application insufficient and the Probate Court devoid of jurisdiction of the subject matter. We do not agree with this conclusion of the trial court and believe the matter of such basic importance as to demand our consideration, even though not raised by cross-appeal.

The bill of exceptions of the proceedings in the habeas corpus action portrays the sequence of events that led to the filing of an application for placement by the appellant relator, Carmeline McTaggart, hereinafter referred to as Mrs. McTaggart, in the Probate Court of Franklin County, and the placement of her child, hereinafter referred to as Baby McTaggart, with the appellee respondents, Gerald A. and Sandra J. Sherwin, hereinafter referred to as the Sherwins.

Mrs. McTaggart lived separate and apart from her husband who had moved to Michigan some years ago, and Baby McTaggart was conceived, admittedly, out of lawful wedlock. Mrs. McTaggart was supporting herself and a three and one-half year old son and was planning to divorce her husband. When pregnant about eight months, she went to see a respected rabbi of this community for advice and assistance in her unfortunate predicament. The rabbi befriended her and offered her help. He first, unsuccessfully, tried to get her to accept the situation and to keep and raise the expected child herself. Then he proposed that she have the child delivered in Cleveland and offered to make arrangements for same. This proposal, likewise, was turned down by Mrs. McTaggart. The first proposal was unacceptable to her for the reason that she believed she was unable to support another child in addition to herself and her son. The second was turned down for the reason that she did not want any of her friends or family to know of a new child. She finally had the rabbi agree to obtain a local couple willing to adopt the child upon birth, and she was assured by him that the child would have a good home and loving care. It was further agreed that the rabbi would obtain a lawyer in the city of Columbus, Ohio, to make arrangements for hospital care in that city during her confinement and to take care of matters in connection with the adoption proceedings in the Probate Court

of Franklin County. She was told that the adoptive parents would pay the confinement and court costs. It was, moreover, understood that Mrs. McTaggart would not know the names or address of the adoptive parents. These plans were fully carried out. Philip R. Bradley, the attorney obtained for her by the rabbi, made arrangements at Grant Hospital, Columbus, Ohio, for her confinement, and informed the Probate Court of Franklin County of the proceedings to be filed and the names and address of the adoptive parents. The Probate Court, thereupon, appointed a qualified social worker who interviewed Mrs. McTaggart and the adoptive parents, the Sherwins, and filed her report with the Probate Court as required by law. Mr. Bradley prepared the necessary papers for Mrs. McTaggart and personally accompanied her to the Probate Court on May 24, 1963, where she filed an application for placement of Baby McTaggart and personally appeared before a referee of the Probate Court and answered questions at the hearing had before such functionary. In conjunction with the application, as "mother and sole parent," she also filed a written waiver and consent to adoption in which she not only gave her consent to the adoption of Baby McTaggart but waived any right to see the investigation records, and to know the names of the adoptive parents and the name to be given the child. She told the referee that she worried about losing her son if her husband learned of this recent birth.

An "Application For Permission To Withdraw Waiver And Consent of Adoption" was executed by Mrs. McTaggart on August 6, 1963, and filed in the Probate Court of Franklin County. This application is still pending and undisposed of in that Probate Court. Mr. McTaggart executed a consent to adoption on September 11, 1963, in which he stated:

"* * * Richard McTaggart expressly and specifically denies that he is the father of said child but makes this consent to adoption solely as the husband of the said Carmeline McTaggart."

Mr. McTaggart also waived "notice of any investigation made, reports submitted or availability for examination of the contents of any reports hereafter submitted by the next friend appointed by the court in this case." This, likewise, was filed in the Probate Court of Franklin County.

The petition for adoption by the respondent adoptive par-

364

ents was filed on September 13, 1963, which is still pending in the Probate Court. The habeas corpus action here before us on appeal was filed in the Court of Common Pleas of Cuyahoga County on August 28, 1963, and came up for hearing on October 21, 1963.

The "Application For Placement" filed pursuant to Section 5103.16 of the Revised Code reads as follows:

"In the Matter of the                Number 215731
      Placement of
      Baby McTaggart
      an infant

"APPLICATION FOR PLACEMENT
(5103.16, R. C.)

"Your applicant who resides in Cleveland, Ohio, represents that she is 22 years of age, that she is the sole parent of Baby McTaggart, a female child who was born at Columbus, Ohio on May 21, 1963. Said child is now a resident of Franklin County, Ohio.

"Your applicant proposes to place said child for adoption, subject to the prior approval of this Court, and says that such proposed placement would be for the best interests of said child. Your applicant has made no written or oral agreement or understanding transferring or surrendering her legal rights, powers, or duties into the temporary or permanent custody of any person. Such proposed placement will not be made through a county welfare department having a child welfare division, county welfare board, the division of social administration or organization authorized to place children under a certificate of the division of social administration. Applicant does not know the identity of the proposed adopting parents.

"Wherefore, applicant prays that the Court cause an independent investigation of the proposed placement to be made and a written report thereof be filed with the Court, that this application be set for hearing and that such proposed placement be approved.

"(Signed)    Carmeline McTaggart

"State of Ohio
"Franklin County, ss.

"Carmeline McTaggart, being first duly sworn, says that

the statements contained in the foregoing application are true as she verily believes.

"(Signed)    Carmeline McTaggart

"Sworn to before me and subscribed in my presence this 22 day of May, 1963.

"(Signed)    Philip R. Bradley
                   Notary Public, Ohio
                   Lifetime Comm."

Section 5103.16, Revised Code, in parts pertinent to our consideration here, reads as follows:
"* * *

"No child shall be placed or received for adoption or with intent to adopt except through a placement made by a county welfare department having a child welfare division, county child welfare board, the division of social administration, or an organization authorized to place children for adoption under a certificate of the division of social administration, unless prior to such placement and receiving of the child the parent or parents of the child have personally applied to, and appeared before, the Probate Court of the county in which such child is then a resident for approval of the proposed placement specified in such application, and unless said court, after an independent investigation of the proposed placement has determined that it is in the best interests of the child and has approved of record the proposed placement. The investigation shall be made by qualified persons having experience in the child adoption field. * * *"

The language set forth in the "Application For Placement," in our opinion, clearly authorized the Probate Court of Franklin County to entertain the placement of Baby McTaggart prior to adoption proceedings and complied with the requirements of Section 5103.16, Revised Code, thereby invoking the exclusive jurisdiction of the Probate Court of Franklin County. Mrs. McTaggart, as the sole parent, personally applied to and appeared before the Probate Court of the county in which such child was then a resident for approval of the *"proposed placement specified in such application"*; and the court, after an independent investigation of the *proposed placement* by a qualified person having experience in the child adoption field, determined that it was in the best interests of the child and approved the *proposed placement* of record.

The trial court in the habeas corpus action, nonetheless, upheld the claim of Mrs. McTaggart, the petitioner, and ruled that the proceedings which had been instituted by her in the Probate Court were void.

The law is well-settled that habeas corpus is a proper action to test the right of a person to the custody of a minor child and, when appropriate, to attack collaterally the jurisdiction of the Probate Court in an adoption proceeding.

It is stated in 26 Ohio Jurisprudence 2d 559, Habeas Corpus, Section 9, that:

"If a judgment under which one is confined or restrained is void, it may be attacked collaterally and the petitioner discharged on habeas corpus in any court of competent jurisdiction. * * *

"* * * If a court is without jurisdiction of the person or the offense, or if its judgment is absolutely void, the rule does not apply and habeas corpus is an available remedy regardless of the availability of the remedy of appellate review."

See: *In re Martin, a Minor,* 76 Ohio Law Abs. 219.

Here we have the unusual situation, however, of a mother invoking the jurisdiction of the Probate Court to place her newly-born baby with a married couple whom she herself procured through an intermediary, having adoption in view, and, subsequent to obtaining an order in this regard, instituting a habeas corpus action in the Common Pleas Court of another County to undo what she had obtained in the initial court, on the ground that the application filed by her in such court was insufficient under the law, rendering the proceedings void.

Many states follow the *general rule* as stated in 3 A. L. R. 535, that:

"The party *at whose instance* a judgment is rendered is not entitled, in a collateral proceeding, to contend that the judgment is invalid. Neither want of jurisdiction, defect of procedure, or any other ground of invalidity can be availed of collaterally by the party who is responsible for the existence of the judgment." (Emphasis added.)

Ohio adheres to this general rule: *Lessee of Merritt* v. *Horne,* 5 Ohio St. 307, 67 Am. Dec. 298; *Julier* v. *Julier,* 62 Ohio St. 90, 78 Am. St. Rep. 697; *Hopper* v. *Nicholas,* 106 Ohio St. 292.

Mrs. McTaggart sought the assistance of a court to carry

out a plan that she engineered to place her baby for adoption with a married couple she obtained through an intermediary. The court she selected had exclusive jurisdiction to fulfill her desires. She obtained that which she wanted from the Probate Court of Franklin County and to that extent was benefited by the order made by that court. If she now is permitted to nullify the proceedings instituted by her in the Probate Court by a collateral attack in a co-ordinate court by means of a habeas corpus action, she will cause much travail, suffering and detriment to the respondent Sherwins. They have invested care, love, devotion and money on behalf of Baby McTaggart, which will have been contributed in vain and to no purpose through no fault of their own. It seems to us that the equitable principle of estoppel is applicable to these circumstances under which Mrs. McTaggart is estopped from denying the validity of the judgment she was responsible for obtaining in the Probate Court of Franklin County.

In *Hopper* v. *Nicholas,* 106 Ohio St. 292, the Supreme Court stated in pragraph one of the syllabus:

"When a proceeding to probate a will is pending in another state, in a court of record, authorized by law to adjudicate the questions arising therein, and one fact necessary to establish the jurisdiction of the court is finding that the residence of the deceased was at death within the territorial jurisdiction of such court, and a person interested in such estate as an heir of the deceased, and a devisee under the will proposed to be probated, enters appearance in such proceeding, admits the jurisdictional fact, consents to adjudication, participates thereafter in the proceedings and receives benefits thereunder, such person and those claiming through and under him are estopped by the judgment therein."

In *Stone* v. *Stone,* 119 Neb. 45, 226 N. W. 807, the Supreme Court stated in the syllabus:

"1. Where the county court has jurisdiction of the subject-matter and of the parties to an adoption proceeding, the decree of adoption is not subject to collateral attack.

"2. A parent who appears in open court, participates in, and consents to an adoption proceeding, and afterwards treats such proceeding as valid, is thereafter estopped to deny the validity of such adoption proceeding."

See 19 American Jurisprudence 716, Estoppel, Section 77; and *Redmond* v. *Wardrep*, 149 Tenn. 35, 257 S. W. 394.

On this consideration alone the trial court should be reversed with respect to that part of the judgment which holds "that the Franklin County Probate Court does not have jurisdiction to approve the placement of said minor with the said respondents."

Apart from the above-stated reason for holding the trial court in error in declaring the proceedings of the Probate Court void, the application of Mrs. McTaggart filed therein substantially complies with the requirements of Section 5103.16, Revised Code, and the Probate Court had and has full authority and power to act in the matters presented to it by such application. The trial court held in its opinion that the application was faulty for not specifically mentioning the names of the placement parents. The statute employs no language warranting such requirement. In her application, Mrs. McTaggart sought the approval of the *"proposed placement specified in such application."* The *proposed placement* was the one brought about by Mrs. McTaggart herself. The recipients of the placement were made known to the Probate Court by name through *Mrs. McTaggart's* representative, Philip R. Bradley. He, in accordance with arrangements she helped formulate, had the court appoint a social worker to interview the respondent Sherwins. While she did not know the Sherwins by name, she knew of them and knew that, at the very moment she was invoking the jurisdiction of the Probate Court for the purpose of the adoption of her baby, the Sherwins were in Columbus to obtain possession of Baby McTaggart, and that she was filing an application to bring such consummation about and that the *proposed placement* mentioned in her application referred unmistakably to such placement and to none other. How can there be any question under these facts that the placement of Baby McTaggart with the Sherwins was the proposed placement *specified* in the application? Mrs. McTaggart knew it, the Probate Court knew it, Philip R. Bradley knew it. Everyone concerned with the undertaking knew it. There was compliance with the requirements of the statute, for it carried out the intent of the law that a placement of a child for adoption be made to persons approved by the court after an independent investigation by a qualified social worker to determine their fitness for

such a responsibility. In our opinion, the application filed under authority of Section 5103.16, Revised Code, effectively invoked the jurisdiction of the Probate Court to make the placement of Baby McTaggart with the Sherwins.

The brief *amicus curiae* gives interesting background material to the enactment of this statute. However, a statute is interpreted by the language of the General Assembly, and the court cannot read something into it which cannot be reasonably implied from the language of the statute itself. *Szekely* v. *Young, Admr.,* 174 Ohio St. 213.

The Supreme Court, in *State, ex rel. Foster,* v. *Evatt, Tax Commr.,* 144 Ohio St. 65, paragraph seven of the syllabus, states the law as follows:

"Courts have no legislative authority and should not make their office of expounding statutes a cloak for supplying something omitted from an act by the General Assembly. The question is not what did the General Assembly intend to enact, but what is the meaning of that which it did enact. (*Slingluff* v. *Weaver,* 66 Ohio St. 621, approved and followed.)"

Moreover, in accordance with modern concepts it is advocated that the names of adoptive parents to the extent possible be kept secret and anonymous. Children's Bureau Publication No. 331-1949, Federal Security Agency, "Essentials of Adoption Law and Procedure," page 2; Child Welfare League of America, Standards for Adoption Service (1962), Chapter 2, Section 2.3.

In *McGaffin* v. *Family and Children's Service of Albany, Inc.,* 6 Misc. 2d 776, 164 N. Y. S. 2d 444, affirmed, 7 App. Div. 2d 769, 179 N. Y. S. 2d 948, the court stated on the issue of secrecy:

"* * * Neither the foster parents nor the child should be subjected to the obvious interference and travail which would almost certainly follow the revelation of the names and address of the foster parents."

The policy of the state of Ohio, as expressed by the following statutes, is in accord with the above.

Section 3107.05, Revised Code, in part reads:
"* * *

"The reports of the investigation required by divisions (B), (C), and (D) of this section, shall not be filed with the other papers in the adoption proceedings, but shall be filed separately

and shall be available for inspection only upon the personal direction of the Probate Judge.
"* * *."

Section 3107.06, Revised Code, in part reads:
"* * *

"The written consents to the adoption shall not be filed with the adoption proceedings, but shall be filed separately and shall be available for inspection only upon the personal direction of the Probate Judge.
"* * *."

Section 3705.18, Revised Code, provides in part:
"(A) Following the entry of each final decree of adoption granted in this state, * * * the department shall issue a new birth certificate using the child's adopted name and the names of and data concerning the adoptive parents and such new birth certificate shall have the same overall appearance as the certificate which would have been issued under Section 3705.14 of the Revised Code if the adopted child had been born to the adoptive parents. * * * Upon the issuance of such new certificate of birth, the original certificate of birth shall cease to be a public record. Such original certificate and the certificate of adoption shall be placed in an envelope which shall be sealed by the department and the contents thereof shall not be open to inspection or copy unless so ordered by the court which decreed the adoption.
"* * *."

Mrs. McTaggart's motion that she be permitted to withdraw her consent to the adoption of her child by the Sherwins is still pending in the Probate Court of Franklin County.

Section 3107.06, Revised Code, states with respect to consents in adoption matters that "Such consents may not be withdrawn after the entry of an interlocutory order, or after the final decree, of adoption."

That provision of the law denies the right to withdraw consents in adoption cases after the entry of an interlocutory order or after the final decree if no interlocutory order precedes the final order. From the language employed it is evident that the General Assembly did not intend that consents could be withdrawn *as of right* if requested *before* an interlocutory order or before a final decree if no interlocutory order precedes a final decree. To intend that consents could be withdrawn

as a matter of absolute right before an interlocutory order or before a final decree, if no interlocutory order precedes a final order, the statute would have *affirmatively* stated that consents may be withdrawn before an interlocutory order or before a final order if no interlocutory order precedes a final order. It follows, therefore, that whether Mrs. McTaggart should be permitted to withdraw her consent to the adoption of Baby McTaggart in the Probate Court of Franklin County or not rests entirely within the discretion of that court.

This is in accord with the weight of authority in the United States, as enunciated by the Supreme Judicial Court of Massachusetts in the case of *Wyness* v. *Crowley*, 292 Mass. 461, 198 N. E. 758, the syllabus of which reads:

"The Probate Court had authority under G. L. (Ter. Ed.) c. 210, to enter a decree of adoption of a child under fourteen years of age on a petition on which the consent of the mother of the child to the adoption was written voluntarily with full understanding of all the facts (the father being of parts unknown and not having appeared after notice), though the mother attempted to withdraw her consent before the hearing on the petition."

In *McRae* v. *Lamb* (Texas), 233 S. W. 2d 193, paragraph seven of the headnotes reads:

"Withdrawal of natural parent's consent to proposed adoption of minor child must be supported by good cause shown and passed on by trial judge as chancellor, with power as parens patriae, to diagnose child's case and prescribe treatment for its future, and he must be satisfied that best interests of child, as well as of other persons concerned, will be served by permitting withdrawal of consent theretofore freely and voluntarily given, to justify denial of adoption on such ground."

See: *Driggers* v. *Jolley*, 219 S. C. 31, 64 S. E. 2d 19; 30 St. Johns Law Review 75; *In re Adoption of Lauless*, 216 Ore. 188, 338 P. 2d 660; and *In re Adoption of a Minor*, 144 F. 2d 644.

Legislation with respect to the withdrawal of consents in adoption proceedings was first enacted by the General Assembly of Ohio in 1943, effective January 1, 1944 (Section 10512-14, General Code, 120 Ohio Laws 434, 437). Consequently, cases decided prior to such date lack authority on the question.

Petitioner, Carmeline McTaggart, in her notice of appeal,

referred "especially to that part of the opinion and judgment with reference to the best interest of the child," and her assignment of error in this court, in the main, is that the trial court erred in ruling that the best interest of Baby McTaggart required that she remain with the respondent Sherwins.

In accordance with our view, as delineated above, the Probate Court of Franklin County had and *has exclusive* jurisdiction to dispose of the adoption proceeding involving Baby McTaggart and, as a consequence, the Court of Common Pleas was without authority to determine any matter properly within the province of the Probate Court of Franklin County in such proceedings. The question of the best interests of Baby McTaggart, under the circumstances, was not before the Court of Common Pleas for determination, and a finding thereon was, therefore, a nullity. *Ex Parte Bushnell,* 8 Ohio St. 599.

Mrs. McTaggart must pursue whatever rights she may have to regain custody of her baby in the Probate Court of Franklin County.

The judgment of the Court of Common Pleas of Cuyahoga County is reversed in part and affirmed in part: the part holding "that the Franklin County Probate Court did not have jurisdiction to approve the placement of said minor with the said respondents" is reversed; the part holding "that the application for a writ of habeas corpus herein filed be and hereby is denied" is affirmed.

Section 2725.05, Revised Code.

*Judgment accordingly.*

ARTL and CORRIGAN, JJ., concur in the judgment and syllabus.