[Filed December 20, 1888.]

MARY E. FURGESON, RESPONDENT, *v.* SARAH A. JONES, APPELLANT.

COUNTY COURT — JURISDICTION — WHAT NECESSARY. — To give a decree of the county court adopting a child any validity, such court must have acquired jurisdiction (1) over the parties seeking to adopt such child, and (2) over the child to be adopted, and (3) over the parents of such child.

NON-RESIDENT — NO PRESUMPTION OF JURISDICTION WHERE THE RECORD IS SILENT. — Where it affirmatively appears that an adverse party to a decree was a non-resident of the state at the time of its rendition, and the record is silent as to his appearance or notice, there is no presumption that such court acquired jurisdiction over his person.

DECREE WITHOUT JURISDICTION. — No person shall be personally bound by a decree until he has had his day in court, by which is meant until he has been duly cited to appear, and has been afforded an opportunity to be heard. A judgment without such citation and opportunity wants all the attributes of a judicial determination.

COURT — GENERAL JURISDICTION — SUMMARY POWERS CONFERRED BY STATUTE. — Where a court of general jurisdiction has summary powers conferred upon it, which are wholly derived from statute, and not exercised according to the course of the common law, or are no part of its general jurisdiction, its decisions must be regarded and treated like those of courts of limited and special jurisdiction.

ESTOPPEL — MUTUALITY. — Estoppels to be binding must be mutual.

ADOPTION OF CHILD — STATUTORY REQUIREMENTS. — A child by adoption cannot inherit from the parent by adoption unless the act of adoption is done in strict accordance with the statute.

[ON REHEARING. — FILED MARCH 12, 1889.]

THE RIGHT OF ADOPTION WAS UNKNOWN to the common law, and repugnant to its principles. Such right, being in derogation of the common law, is a special power conferred by statute, and the rule is, that such statutes must be strictly construed.

CONSENT LIES AT THE FOUNDATION OF STATUTES OF ADOPTION, and when it is required to be given and submitted, the court cannot take jurisdiction of the subject-matter without it.

UNDER OUR STATUTES, WHEN THE PARENTS ARE LIVING and do not belong to the excepted classes, such consent must be given, and is a prerequisite to jurisdiction.

THERE IS A MARKED DISTINCTION between jurisdiction and the exercise of jurisdiction. When jurisdiction has attached, all that follows is but the exercise of jurisdiction, but jurisdiction does not attach until the conditions upon which it depends are fulfilled. Hence a decree rendered without jurisdiction does not estop any one, and may be collaterally assailed in any action.

APPEAL from Marion County.

STRAHAN, J.— This is an action of ejectment prosecuted by the plaintiff to recover certain real property situated in the county of Marion.

It appears from the findings that one D. W. Jones was the owner of the real property in controversy at the time of his death, and that he died intestate in said county of Marion; that one Emma G. Charlesworth was his only heir at law, unless the plaintiff was also an heir by virtue of a certain decree of the county court of Marion County, Oregon, by which said court allowed said D. W. Jones and the defendant herein to adopt the plaintiff, if said decree is valid; that prior to the commencement of this action, said Emma G. Charlesworth duly conveyed all her interest in said real property to the defendant, who thereby became the owner thereof, unless the plaintiff was entitled to inherit one half thereof by virtue of said decree of adoption; that prior to September 28, 1876, said Emma G. Charlesworth and Sylvester H. Jenner were husband and wife, and the plaintiff was born to them in lawful wedlock, and that on the twentieth day of September, 1876, said parties were by a decree of the district court of the twelfth judicial district in the state of California duly divorced, and the care and custody of the plaintiff was duly awarded to said Emma; that on April 2, 1877, said

D. W. Jones and the defendant, his wife, made and signed a certain petition, which was presented to the county court of Marion County, Oregon, as follows:—

"To the Hon. John Peebles, county judge for the county of Marion and state of Oregon:—

"Your petitioners, D. W. Jones and Sarah A. Jones, his wife, of the city of Salem and state of Oregon, respectfully represent to your honorable court that they now have the care and custody of Mary Ellen Jenner, a female child of the age of ten years; that the parents of said child are Sylvester H. Jenner, now residing in San Francisco, California, and Emma G. Jenner, since divorced from said Sylvester H. Jenner and married to George Charlesworth; that in said decree of divorce the care and custody of said child was given to its mother, Emma G. Jenner, now Emma G. Charlesworth; that your petitioners desire to adopt the said Mary Ellen Jenner as their own child, and pray your honorable court for a decree making said child to all legal intents and purposes the child of petitioners, and that the name of said child be changed to Mary Ellen Jones.

(Signed)        "D. W. JONES.
                      "S. A. JONES."

"STATE OF OREGON,   } ss.
  COUNTY OF MARION.}

"I, Emma G. Charlesworth, being duly sworn, say that I am the mother of Mary Ellen Jenner mentioned in the foregoing petition of D. W. Jones and wife; that I was divorced from Sylvester H. Jenner at San Francisco, on or about September 1, 1876, and that the court, in granting the divorce, awarded the care and custody of said child to its mother, deponent herein; that I hereby consent to the adoption of said child by said D. W. Jones and wife, and that the name of said child be changed to Mary Ellen Jones.      "EMMA G. CHARLESWORTH. .

. "Subscribed and sworn to before me this nineteenth day of March, 1877.

[SEAL]                "SETH R. HAMMER, Notary Public.

"Indorsed, —

"Ordered that the within application be granted, and that a decree be entered in accordance with the prayer of this petition and the law in such cases provided.

"April 2, 1877.        J. C. PEEBLES, County Judge.

"Filed April 2, 1877.

                "GEORGE A. EDES, County Clerk."

On the same day the following decree or order was entered in said matter by said county court: —

"Now at this day comes D. W. Jones and S. A. Jones, his wife, and present to this court their petition asking leave to adopt Mary Ellen Jenner, who is ten years of age, and to change her name to Mary Ellen Jones, and it satisfactorily appearing to the court that said Mary Ellen Jenner is the daughter of Sylvester H. Jenner and Emma G. Jenner, now Emma G. Charlesworth; that said Emma G. Jenner was divorced from said Sylvester H. Jenner in the state of California, and that Sylvester H. Jenner is still a widower of said state; that in the decree of divorce, as aforesaid, the care and custody of said Mary Ellen Jenner was awarded by the court to the mother, the said Emma G. Jenner, now Emma G. Charlesworth, and it further appearing that the written consent of the said Emma G. Jenner, now Emma G. Charlesworth, to the said adoption and change of name has been filed with the petition aforesaid to this court, and that the said D. W. Jones and Sarah A. Jones are of sufficient ability to bring up said child and to furnish her with sufficient care and attention and education, and that it is fit and proper and for the best interests of said child that said adoption should take place, — it is therefore ordered by the court that from and after

this date the said Mary Ellen Jenner shall be to all intents and purposes the child of said petitioners, D. W. Jones and Sarah A. Jones, and that the name be changed to that of Mary Ellen Jones.

   (Signed)            "JOHN C. PEEBLES, Judge."

It is further found by the court that the time of presentation of said petition and consent, and the rendition of said decree of adoption, the father of said plaintiff was living, but that no notice whatever was given to him of the filing of said petition or consent, or of said proceedings thereon, prior to the rendition of said decree, nor was any appearance for or on behalf of said Jenner ever entered in said county court in said proceeding, or in relation thereto; that about three years after the rendition of said decree, said plaintiff informed her father that she had been adopted by said D. W. Jones and his wife, the defendant herein, and her father approved thereof; that no one has ever appealed from the said decree of said county court; that after said decree was rendered, Jones and the defendant took charge of the plaintiff, and that she lived with them for about six years, and was during said time treated by Jones and wife as their child.

There were also other findings of fact, but they present no question of law for our consideration on this appeal.

The court found as conclusions of law: "1. That the decree of adoption mentioned in and set out in my sixth finding of fact was and is binding and conclusive upon Emma G. Charlesworth, and upon Sarah A. Jones, her successor in interest; 2. That the plaintiff is the owner and entitled to the possession of one undivided one half (subject to the defendant's dower interest therein) of the real property described in her complaint; 3. That the plaintiff is entitled to a judgment for the possession of said real property, and for one dollar damages, and for her

costs and disbursements." From this judgment the defendant has appealed to this court.

1. The sole question to be determined is the validity of. the decree of the county court of Marion County, allowing D. W. Jones and wife, the present defendants, to adopt the plaintiff as their child. If that decree is valid, then the judgment of the court below is right and ought to be affirmed; if otherwise, it must be reversed.

The act of adopting a child is not of common-law origin, but was taken from the civil law and introduced here by statute. The provisions on the subject, as found in several sections of Hill's Code, section 2937, provide who may adopt a child, residence of parties, and who must join in the petition, and in what court the petition is to be presented. Section 2938 says: "The parents of the child, or the survivor of them, shall, except as herein provided, consent in writing to such adoption. If neither parent is living, the guardian of the child, or if there is no guardian the next of kin in this state, may give such consent; or if there is no next of kin, the court may appoint some suitable person to act in the proceedings as next friend of the child, and to give or withhold such consent."

By section 2939 the court is authorized to proceed as if a parent were dead, if such parent is insane, imprisoned in the state prison, under a sentence for a term not less than three years, or has willfully deserted and neglected to provide proper care and maintenance for the child for one year next preceding the time of filing the petition.

Section 2940 provides where a parent does not give consent to the adoption of a child, he is to be personally served with a copy of the petition and order thereon, if found in the state; if not, said petition is to be published once a week for three successive weeks in such newspaper printed in the county as the court directs, the last publi-

XVII. OR.—14

cation to be at least four weeks before the time appointed for the hearing.

Section 2941 requires the consent of the child to such adoption, if he is of the age of fourteen years or upwards.

Section 2942 defines the duty of the court upon the hearing, and what facts must be made to appear, and the substance of the order to be made.

Section 2943 defines the effect of such adoption as to relationship and inheritance, and section 2944 deprives the parents of such child of all legal rights as respects the child, and frees him from all obligation of maintenance and obedience as respects his parents.

The question thus presented for our determination is a very important one, and lies in narrow limits. Its correct solution depends upon the single question whether or not the county court of Marion County, at the time it made the decree authorizing Jones and wife to adopt the plaintiff, had acquired the requisite jurisdiction over the parties for that purpose. To give its decree any force or effect, jurisdiction must have been acquired by the court (1) over the persons seeking to adopt the child, (2) over the child, and (3) over the parents of the child.

It may be assumed, I think, that enough is shown to give said court jurisdiction under subdivisions 1 and 2, and over Mrs. Emma G. Charlesworth, the mother of the child.

The sole question to be examined, therefore, is, whether enough is shown to give said court jurisdiction over the person of Sylvester H. Jenner, the child's father. But before proceeding to the consideration of this question, it may be well to advert to the principles of law to be applied in the determination of the question of jurisdiction. And in the examination of this question, we assume for the purposes of this case, but without deciding it, that under the constitution and laws of this state county

courts, in the exercise of the powers conferred by this statute, are to be regarded as courts of general jurisdiction.

It appears that at the time the petition was presented to the county court, Sylvester H. Jenner was a non-resident of this state. In such case, and the record is silent, there can be no presumption that jurisdiction over his person was acquired.

Mr. Justice Field, in *Galpin* v. *Page*, 18 Wall. 350, states the rule applicable in such case: "Whenever, therefore, it appears from the inspection of the record of a court of general jurisdiction that the defendant against whom a personal judgment or decree is rendered was at the time of the alleged service without the territorial limits of the court, and thus beyond the reach of its process, and that he never appeared in the action, the presumption of jurisdiction over his person ceases, and the burden of establishing jurisdiction is cast upon the party who invokes the benefit or protection of the judgment or decree."

Further: "It is a rule as old as the law, and never more to be respected than now, that no one shall be personally bound until he has his day in court, by which is meant, until he has been duly cited to appear, and has been afforded an opportunity to be heard. Judgment without such citation and opportunity wants all the attributes of a judicial determination. It is judicial usurpation and oppression, and never can be upheld where justice is justly administered."

In the same case, and speaking more directly to the point now under consideration, the court quoted with approbation a decision of the supreme court of New Hampshire, — *Morse* v. *Presby*, 25 N. H. 382, — to the effect that a court of general jurisdiction may have special and summary powers, wholly derived from statutes not exercised according to the course of the common law, and which do not belong to it as a court of general juris-

diction. In such cases its decisions must be regarded and treated like those of courts of limited and special jurisdiction. The jurisdiction in such cases, both as to the subject-matter of the judgment and as to the persons to be affected by it, must appear by the record; and everything will be presumed to be without the jurisdiction which does not distinctly appear to be within it. And after some other observations, the court adds: "But where the special powers conferred are exercised in a special manner, not according to the course of the common law, or where the general powers of the court are exercised over a class not within its ordinary jurisdiction upon the performance of prescribed conditions, no such presumption of jurisdiction will attend the judgment of the court."

The facts essential to the exercise of the special jurisdiction must appear in such cases upon the record. This doctrine was fully approved by this court in *Northcutt* v. *Lemery*, 8 Or. 317, which renders its further discussion unnecessary.

Applying these tests to the record before us, and it is manifest that the court had no jurisdiction whatever over Sylvester H. Jenner at the time it rendered said decree of adoption. He was not served with notice and did not appear, and therefore the court was utterly without jurisdiction to render any decree or make any order which could in any manner affect his rights.

2. But counsel for plaintiff argue that this defendant is in no condition to make the objections of want of jurisdiction; that she consented to the act of adoption, and that she is bound by it. If this is so, it must be on the ground of estoppel. But estoppels to be binding must be mutual, and if Sylvester H. Jenner, who was a necessary party to this proceeding, was not bound by the decree, it is not perceived on what ground the same could be held binding on any of the other parties.

But waiving this objection, I think the findings show that the attempted adoption was never consummated, because the statute under which the proceedings were had was never complied with. The statute requires the consent in writing of the parents, unless they are brought within its exceptions. Here only one parent consented, and there was no attempt made to bring him within the exceptions contained in the statute, and the petition was not served upon him. A question closely akin to this in principle came before the supreme court of Iowa, in *Tyle* v. *Reynolds*, 53 Iowa, 146, and the court said: "Therefore, a child by adoption cannot inherit from the parent by adoption unless the act of adoption has been done in strict accord with the statute. The statutory conditions and terms are that the written instrument must be executed, signed, and acknowledged, and *filed for record;* when this is done the act is complete. If the named requisites are not done, then the act is not complete, and the child cannot inherit from the parent by adoption. The filing for record is just as important in a statutory sense as the execution or acknowledgment. One may be dispensed with as well as the other, for the right depends solely upon the statute. There is no room for construction, unless we eliminate words from the written law, and this we are not authorized to do." · *Long* v. *Hewitt*, 44 Iowa, 262, and *Keegan* v. *Geraghty*, 101 Ill. 26, lay down, in effect, the same principle.

In the state of New Jersey a statute is in force very similar to ours, which came before the prerogative court of that state and received a construction in *Luppie* v. *Winans*, 37 N. J. Eq. 245. In that case the court said: "The child was under fourteen years of age, and the court, as appears by the opinion, construed the statute as requiring no consent, either on part of parent or child, to the adoption in such case, but held that in such cases the

statute confides the whole matter to the discretion of the orphans' court without regard to the wishes of either parent or child. This construction is entirely inadmissible. It would make the law liable to be the instrument of the forcible transfer of one man's child to another person, in spite of the parent's opposition, provided the court deems it advantageous for the child that the transfer be made. The law expressly gives to the decree of adoption the effect of severing absolutely the legal ties between the parent and the child, and putting an end to their reciprocal relation. It declares that from the date of the decree, the rights, duties, and privileges, and relations between the child and the parent, except the right of inheritance, are severed, and transforms them all. . . . . A just, and it seems to me an obvious and necessary, construction of our statute of adoption is, that if the child be under fourteen there need be no consent on its part, but the consent of the parent or parents, if there be any living, provided they be known and not hopelessly intemperate or insane and have not abandoned the child, must be obtained."

The same view seems to prevail in Pennsylvania under the statute of that state. The only case cited upon the argument from that state is *Booth* v. *Van Allan*, 7 Phila. 401; *Hurley* v. *O'Sullivan*, 137 Mass. 84. The court in passing upon the effect and construction of the statute said: "But there is one other objection which we think is fatal. The act of May 4, 1855, empowers the court to make a decree of adoption with the consent of the parents or surviving parent, or if there be none, of the next friend of an infant. The strict legal signification of the term ‘parents’ is the lawful father and mother of a child, but it may be questioned whether it does not mean more than this in the act of 1855, — whether the words ought not rather be taken to mean those who stand in the relation

of father and mother to the infant. If this be the correct view, then the proceedings for leave to adopt the infant as hers are void for want of consent of parents. New Hampshire has a statute similar to ours, which came before the supreme court of Massachusetts in *Foster* v. *Waterman*, 124 Mass. 592. A child of persons resident in the state of Massachusetts had been adopted in the state of New Hampshire and the validity of said adoption was the question to be decided, and the court held that such a statute is not to be presumed to extend to a case in which the domicile of those petitioning for leave to adopt a child is in another state; the provision in the statute of New Hampshire, that the decree may be made in the county where the petitioner of the child resides, implies that the statute is intended to be limited to cases in which all parties have their domicile in that state."

3. It was claimed, however, that the adoption was complete as to the defendant, and the other persons who were in fact parties to the record. This construction was pressed upon the supreme court of Iowa in *Shearer* v. *Weaver*, 56 Iowa, 578, and rejected, the court saying: "Our statute having provided specifically the means whereby one sustaining no blood relation to an intestate may inherit his property, the rights of inheritance must be acquired in that manner, and can be acquired in no other way."

From these citations, and the plain import of the statute itself, it is manifest that the attempted adoption of the plaintiff by Jones and wife was never consummated, and that the plaintiff never acquired any rights to inherit Jones's property by reason of the facts found by the court.

The proceedings were fatally defective because the father of the child did not consent to the adoption nor was any notice of the application for such adoption served

upon him, nor did he appear; and being a non-resident of the state, I am inclined to the opinion the statute did not apply to him. However that may be, the proceedings were fatally defective on the other grounds.

The court's second conclusion of law was therefore not justified by the facts found, and for that reason the judgment must be reversed and the cause remanded to the court below.

The other case between the same parties and submitted with this one, and involving the same questions, must also be reversed and remanded.

The conclusions reached render it unnecessary to order a new trial, because in no possible view of the facts would the plaintiff be entitled to recover.

### PETITION FOR REHEARING.

[Filed March 12, 1889.]

LORD, J.—In this motion for rehearing the argument of counsel amounts to this: that the absence of consent of one of the parents, or to give the notice as prescribed by the statute if not found in the state, only renders the proceeding and decree of adoption voidable, but not void, and unless corrected on appeal, such decree cannot be collaterally assailed. This contention is necessarily based on the idea that the consent of both parents, if living and not belonging to the excepted classes, or notice as prescribed and already adverted to, is not a prerequisite to jurisdiction; that it is sufficient if the consent of one of the parents be obtained, and that the other parties, viz., the child and petitioning parents, are present and consenting to the proceeding for jurisdiction to attach, and thus to authorize the court to judicially act.

If this position be tenable, the decree of adoption is not void, and cannot be collaterally attacked, for it is elementary law that after jurisdiction has attached, although

errors may occur in the exercise of such jurisdiction, the judgment rendered in such case is beyond the reach of collateral inquiry.

On the other hand, if the consent of both parents, or the consent of one and notice to the other as prescribed, whether in or out of the state, as the case may be, is necessary, and must precede the right or power of the court to act judicially, all other parties being present and consenting, such unity of consent, so to speak, is a prerequisite to jurisdiction, and a decree not founded upon it would be a mere nullity, binding no one, and subject to be so declared in a collateral action.

Our inquiry, then, is reduced to this: What are the requirements of our statute essential to confer jurisdiction upon the facts as presented in this record? It will assist us some in determining this question to ascertain the nature of the power conferred and the rule of construction in such case to be applied to the statute.

The permanent transfer of the natural rights of a parent was against the policy of the common law. The right of adoption, as conferred by this statute, was unknown to it, and repugnant to its principles. Such right was of civil-law origin, and derived its sanction from its code. The right of adoption, then, being in derogation of common law, is a special power conferred by statute, and the rule is, that such statutes must be strictly construed. (*Brown* v. *Basey*, 3 Dall. 365; Dwarris on Statutes, 257.) This being so, the statute must receive a strict interpretation, and every requirement essential to authorize the court to exercise the special power conferred must be strictly complied with.

The statute provides that the parents of the child, except as therein provided, shall consent in writing to such adoption, but further provides that if a parent does not consent to the adoption of his child, the court shall order a

copy of the petition and order therein to be served on him personally if found in the state, and if not, by publication as therein provided.

As the facts do not involve the excepted classes, the provisions of the statute in that regard are omitted. The object of such service, whether actual or constructive, when it has reference to those cases which require the written consent, and such written consent is not given, is to notify the party of the hearing in order to ascertain whether his consent may be obtained or will be given, so that the court may have the requisite authority to make the decree of adoption. If he appears and refuses to give such consent, there is then wanting what the statute specially names as essential to authorize the court to make a decree, or judicially act in the premises. The reason is, that consent lies at the foundation of statutes of adoption, and when it is required to be given and submitted to the court, the court cannot take jurisdiction of the subject-matter without it.

"The consent of the natural parents," says one writer, "and of the child if of sufficient understanding, are, except in cases where the parents have deserted their child, or are confined in prison, as a rule indispensable." (3 Cent. L. J. 398.)

Says another writer in annotating a case, the "adoption, except where it consists merely in declaring the person adopted an heir of the adopter, must be founded on consent. All the statutes require the written, and generally the recorded, consent of the adopting parent or parents, and *of the parents*, parent, guardian, next of kin, or next friend of the minor appointed by the court, in most states the consent of the minor, if over fourteen, and finally the consent of the court." (14 L. L. R. 682.)

. And it is further remarked that the case annotated is valuable as an illustration of the strict construction that

ought to be applied in deciding questions arising under statutes of adoption.

In *Luppie* v. *Winans,* 37 N. J. Eq. 245, the court say: "A just, and it seems to me an obvious and necessary, construction of our statute of adoption is, that if the child be under fourteen there need be no consent on its part, but the consent of the parent or parents, if there be any living, provided they be known and not hopelessly intemperate or insane and have not abandoned the child, must be obtained."

It is thus apparent that if the parents are living and do not belong to the excepted classes, that their consent must be obtained and is a prerequisite to jurisdiction; that without such consent jurisdiction does not attach, and the court is without authority to act and make a decree of adoption, and if it undertakes to do so, its decree will be a nullity, not voidable but void, and may be collaterally assailed in any action.

Now, by this record the admitted facts are, that the father of the plaintiff did not belong to the excepted classes, that he did not give his written consent, and that no notice in any form was given or attempted to be given him.

In such case the statute is explicit, and requires the consent of the parents in writing to sanction the authority of the court before it can make a decree of adoption; certainly, it could not proceed without notice at least, assuming that notice may be given in such cases, and a failure to appear would be equivalent to consent.

But in this case the contention is, that the court could exercise its jurisdiction without such consent, and that its decree would only be avoidable, and that those appearing, it not having been corrected upon appeal, would be estopped by it. The vice of this argument lies in assuming that jurisdiction attached, and the court was author-

ized to make a decree of adoption without the consent which the statute prescribes as essential upon the facts as presented by this record.

There is a marked distinction between jurisdiction and the exercise of jurisdiction. When jurisdiction has attached, all that follows is but the exercise of jurisdiction, but jurisdiction does not attach until the conditions upon which it depends are fulfilled.

In this case, the jurisdictional facts are the consent of the parents, not one of them but both, as the statute requires, and the absence of it is fatal to the validity of the decree. Hence, such a decree cannot bind or estop any one, and may be collaterally assailed, whenever and wherever it may be interposed in any action.

The motion is overruled.