Argued October 23; affirmed December 10, 1946

ADOPTION OF CAPPARELLI
# WILLIAMS ET UX. *v.* CAPPARELLI
(175 P. (2d) 153)

*Leroy L. Lomax,* of Portland (with John P. Ronchetto, of Portland, on brief), for appellants.

*Clifford W. Powers,* of Portland, for respondent.

Before BELT, Chief Justice, and KELLY, BAILEY, LUSK, BRAND and HAY, Justices.

HAY, J.

Petitioners appeal from an order of the Circuit Court for Multnomah County denying their petition to adopt a child.

On March 10, 1945, at a hospital in the city of Portland, the child in question was born to Florence Capparelli, an unmarried woman, aged twenty-one years. On March 14, 1945, Miss Capparelli executed a written consent to the adoption of her child by petitioners, and, with her approval, the child was delivered into their custody. On July 2, 1945, petitioners filed a petition for leave to adopt the child, and, in support thereof, exhibited the mother's written consent. On July 23, 1945, Miss Capparelli filed a formal revocation and withdrawal of her consent, and a petition for leave to intervene, in which she alleged that she signed the consent to adoption while under undue influence and in a state of nervous and physical exhaustion. Leave to intervene was granted.

After a hearing, the court made findings that undue influence was exerted to induce Miss Capparelli's consent; that the consent was not her free and volun-

tary act; and that she had revoked and withdrawn it prior to entry of any decree in the proceedings. A decree was entered accordingly, denying the petition to adopt and restoring the child to its mother.

■ The evidence indicates that, when she signed the consent to adoption, Miss Capparelli was fully aware of the tenor and effect of the writing and that her physical condition was normal. She resided with her parents and was employed at one of the Portland shipbuilding yards, leaving for work early in the morning and returning home late at night. Her parents were unaware of her pregnancy. After the birth of her baby, her brother called upon her at the hospital and told her that her parents would not permit her to bring the baby home with her. Without doubt, her feelings of shame and humiliation had laid her under considerable emotional tension, but, in our opinion, the evidence was insufficient to warrant the court's finding that her consent was induced by undue influence. See 17 Am. Jur., Duress and Undue Influence, section 2; 1 Am. Jur., Adoption of Children, section 73.

In accordance with the practice of the hospital authorities in such cases, Miss Capparelli was not permitted to ascertain who were the prospective adoptive parents. It is proper to observe that the alleged undue influence was charged against Miss Capparelli's brother, and that there was no evidence or suggestion that petitioners themselves exerted or attempted to exert any influence whatever over her.

About three months after she had surrendered possession of the child, Miss Capparelli, after considerable inquiry, learned, through her attorney, the identity and whereabouts of petitioners, and thereupon notified them that she withdrew her consent to the adoption

of the child. The petition to adopt was filed within a few days thereafter. It specifically alleged that the mother had consented in writing to the adoption, but made no mention of the fact that she had withdrawn her consent.

■ The maintenance of the natural rights of parents to the custody and care of their children is of vital interest to the state. Adoption is of civil law derivation, and was unknown to the common law. Adoption proceedings are the exercise of a power conferred by statute, and have no other sanction. The statute, being in derogation of the common law and of the parents' natural rights, must be strictly construed. *Furgeson v. Jones,* 17 Or. 204, 20 P. 842, 3 L. R. A. 620, 11 Am. St. Rep. 808; *Non-She-Po v. Wa-Win-Ta,* 37 Or. 213, 62 P. 15, 82 Am. St. Rep. 749; *Long v. Dufur,* 58 Or. 162, 113 P. 59; *Matter of Cozza,* 163 Cal. 514, 126 P. 161, Ann. Cas. 1914A, 214.

■ Our statute (sections 63-402 to 63-410, inclusive, O. C. L. A.) requires that the parents of the child shall consent in writing to the adoption. In default of such consent, they must have legal notice of the proceedings and an opportunity to be heard. Except under certain contingencies not involved herein, wherein the statute does not require it, consent of the parents (or, in the case of an illegitimate child, of the mother) is jurisdictional, and, if such consent is lacking, the court is without power to make a decree of adoption. *Matter of Cozza,* supra; *Bilderback v. Clark,* 106 Kan. 737, 189 P. 977, 9 A. L. R. 1622; *In re Knott,* 138 Tenn. 349, 197 S. W. 1097; *In re Lease,* 99 Wash. 413, 169 P. 816.

Counsel for Miss Capparelli insists that, to be effective, consent of the natural parent must be freely and voluntarily given, and that, in this case, concealment

of the identity of the proposed foster parents vitiated the consent. We are unwilling to give an unqualified assent to counsel's contention in this regard. Complete severance of all relations between the natural parents and the child—especially when the child is illegitimate —is, without doubt, socially desirable and in the best interests of all concerned. Cf. *In re Adoption of a Minor,* 144 F. (2d) 644, 156 A. L. R. 1001. In view of the disposition which we shall make of the case, we shall assume, without deciding the point, that we are dealing with a consent freely and voluntarily given and sufficient under the terms of the statute.

■■ It is the general rule that a natural parent who has consented to the adoption of a child in compliance with a statute which makes such consent a prerequisite to adoption may effectively withdraw or revoke his consent at any time before the court has made a decree of adoption. *French v. Catholic Community League,* 69 Ohio App. 442, 44 N. E. (2d) 113; *Fitts v. Carpenter* (Tex. Civ. App.) 124 S. W. (2d) 420; *In re White's Adoption,* 300 Mich. 378, 1 N. W. (2d) 579, 138 A. L. R. 1034; *In re Cohen,* 279 N. Y. S. 427; *In re Anonymous,* 33 N. Y. S. (2d) 793; *In re Burke's Adoption,* 60 N. Y. S. (2d) 421; *Nelms v. Birkland,* 153 Wash. 242, 279, P. 748; Anno., 138 A. L. R. 1038; 2 C. J. S., Adoption of Children, section 21 a (4). A few holdings to the contrary appear to have been based upon the provisions of the particular statutes under consideration. It is said, moreover, that a variety of other matters must be taken into consideration, as, for example, the circumstances under which the consent was given; the length of time elapsing, and the conduct of the parties, between the giving of consent and the attempted withdrawal; whether or not the withdrawal of consent was

made before or after the institution of adoption proceedings; the nature of the natural parent's conduct with respect to the child both before and after consenting to its adoption; and the "vested rights" of the proposed adoptive parents with respect to the child. In some cases, courts have considered the relative abilities of the adoptive parents and of the natural parents to rear the child in the manner best suited to its normal development, and other circumstances indicative of what the best interests of the child require. Anno., 156 A. L. R. 1011. Nevertheless, it would seem that courts should not interfere with the natural relationship of parent and child upon the sole ground that the proposed adoptive parents are able to give the child superior advantages over those within the means or social status of the natural parents. *State ex rel v. Beardsley,* 149 Minn. 435, 183 N. W. 956.

A text-writer has suggested that some of the more recent decisions have shown a tendency on the part of the courts to deny the right of a parent to withdraw consent to adoption before final decree, if the consent was given voluntarily with a full understanding of every fact necessary thereto. 2 C. J. S., Adoption of Children, section 21 a (4) (1946 Cum. Annual Pocket Part). It will be seen, however, from a study of the cases cited in support of the text, (and relied upon by petitioners herein) that the rule, under which a parent is permitted to withdraw consent before final decree, has not been departed from, but rather that in the cases cited matters of equitable estoppel were invoked against the parent. So, in *Wyness v. Crowley* (1935) 292 Mass. 461, 198 N. E. 758, the mother permitted the petitioners to have the care and custody of her child for over a year and a half after she had given her consent to

adoption, before changing her mind and attempting to withdraw her consent. The court appears to have given weight to the trial court's finding that the petitioners, in the interim, had "moulded the [their] manners of living to care for said child", and felt that it would be unjust to permit the mother, under the circumstances, to withdraw her consent at will. In *Lee v. Thomas* (1944) 297 Ky. 858, 181 S. W. (2d) 457, the mother waited fifteen months after signing her consent to adoption and surrendering the child to the petitioners before undertaking to withdraw her consent. The court, while recognziing that, as a general rule, parents have a right to the custody of their offspring superior to the rights of all others, nevertheless, under the circumstances of the case, felt that it was justified in taking into consideration the best interests of the child. The adoptive parents were people in easy circumstances who, on the faith of consent, had expended some $2,500 in the care of the child. *In re Adoption of a Minor* (1944) 144 F. (2d) 644, 156 A. L. R. 1001, involved construction by the Court of Appeals of the District of Columbia of an act of Congress respecting adoption of children. The court, holding that the natural mother was estopped from withdrawing her consent to adoption, said that Congress had a right to assume, in adopting the statute, that principles of contract, waiver, and equitable estoppel would, ordinarily, prevent arbitrary withdrawal of consent, and that "statutory provision for a promise made, or consent given, voluntarily, and acted upon by innocent persons, would insure protection for the interests of all concerned." Congress intended to forestall "the probability of changes of mind; especially as the mother's decision to keep or give up her infant would be influenced by deep-seated biological urges

and psychological instincts and emotions,'' and by the intervention of kinsfolk and friends. The court's views may be summarized in the following quotation:

"It is inconceivable that Congress—with prevision of such efforts to avoid parental consent and while forbidding, specifically, a method of avoidance favored in the law above all others [The statute provides that consent of a parent who is a minor shall not be voidable because of that minority.]—could possibly, at the same time, have contemplated *unrestricted withdrawal of consent without cause or reason of any kind.* Instead, it is apparent that, in this respect—as well as in those provisions of the statute which make unnecessary the consent of parents who have abandoned their children, or who have absconded, or have been deprived of custody, or otherwise have revealed their unwillingness to measure up to parental responsibility—Congress has with deliberation and finality closed the door against changes of mind. It has restored to the court in this instance, as in others during recent years, its old power, as *parens patriae,* to diagnose the case of the unfortunate infant and prescribe a course of treatment for its future; unhampered by the changing winds of emotion which alternately submerge and restore parental attributes.''

The decision is interesting and persuasive, but, as it is contrary to what we conceive to be the weight of authority, and, moreover, is based upon a statute less rigid than ours in respect of jurisdiction based upon parental consent in such cases, we are unable to follow it.

Other cases cited by petitioners may be distinguished. *In re Rising,* 104 Wash. 581, 177 P. 351, presented a situation in which there had been a delay of three years between the giving of the mother's consent to adoption and the institution of the adoption proceed-

ings. The court was of the opinion that the consent was sufficient authority for the adoption, without further notice to the mother. Revocation of consent was not involved. *In Lane v. Pippin,* 110 W. Va. 357, 158 S. E. 673, the court held that, in the absence of fraud in the adoption proceedings, or a showing that the best interests of the child would be subserved by annulling the adoption, the court should not consider a mere change of mind on the part of the natural parent as a sufficient reason to annul the adoption. Revocation, in that case, was not attempted until after the decree of adoption had been made.

■ The consent of the mother of an illegitimate child, given from her hospital bed within a few days after the birth of the child, should not be regarded, under the circumstances of the case at bar, as a final and irrevocable act. *In re Anderson,* 189 Minn. 85, 248 N. W. 657. We hold that Miss Capparelli's consent was effectively withdrawn before final action of the court upon the petition for adoption. She was not chargeable with lack of diligence in the premises, and we find no ground of estoppel against her.

The decree of the lower court was right, and it is affirmed, without costs.