Submitted December 4, 1958, remanded with directions
April 29, 1959

# IN THE MATTER OF THE ADOPTION OF
## DARRYL K. LAULESS, a minor
## DUGGER ET UX v. LAULESS

338 P. 2d 660

Jack, Goodwin & Santos, Oregon City, and Richard E. Rink, Oregon City, for appellants.

Roy H. Madsen, Oregon City, and Clarence L. Fitzwater, Portland, for respondent.

O'CONNELL, J.

This is an appeal from an order setting aside a decree of adoption which had made the petitioners, who are the appellants in this case, the adoptive parents of Darryl Keith Lauless.

Myrtle Lauless, the respondent, is the natural mother of the child. In October, 1953, soon after she obtained a divorce from her husband, she placed the child, then ten months of age, in the custody of the petitioners. A few months later she and the petitioners discussed the possibility of the latter adopting the child. In April, 1954 the natural father's written consent to adoption was obtained. At about the same time the petitioners' attorney mailed a similar writing to the respondent. She kept the instrument for some time and finally signed it on July 12, 1955 and mailed it to the petitioners.

On September 8, 1955 the petitioners filed a petition for adoption. A decree of adoption was entered on January 30, 1956. On February 17, 1956 the respondent moved to set aside the decree on the ground that she had not received personal notice of the hearing on the petition as required by ORS 109.380 and that the consent was given by her for the limited purpose of relinquishing her parental rights in the child in the event that she would be killed in the course of making a trip to Alaska. The motion was granted and the decree was set aside on April 26, 1956.

The respondent testified that prior to the entry of the decree she had notified the petitioners and their attorney that she did not want them to go ahead with the adoption proceedings. This is denied by the petitioners. It is undisputed, however, that the respondent

informed the Public Welfare Commission of her objection to the adoption. The report of the commission filed with the trial court in December, 1955 contained the following statement:

> "She states that she had known the petitioners for several years and originally placed Darryl with them on a foster home basis. This last summer she planned to go to Alaska to seek employment. At that time she asked Mr. and Mrs. Dugger if they would adopt the child. She was motivated by a wish to protect Darryl while she was out of the country and to prevent her husband and his relatives from removing Darryl from the home. Mrs. Lauless did go to Alaska, taking her four-year-old daughter, Janice, with her but only remained one week and returned to the United States.

> \* \* \* \* \*

> "Mrs. Lauless now feels that she would like to leave Darryl with the petitioners on a foster home basis, but is definitely opposed to relinquishing him for adoption. In her view, an adoption was originally considered because of her absence from the country, but now that she is back again, there is no need to proceed."

The trial court was of the opinion that because the Public Welfare Commission's report disclosed that the respondent withdrew her consent, it was the duty of the court to issue a formal citation to the respondent to appear in the proceeding and present her objections, if any, to the adoption.

■■ It was established in *Williams et ux. v. Capparelli,* 180 Or 41, 175 P2d 153 (1946), that in the absence of an estoppel the natural parent may withdraw his consent to adoption at any time before the entry of the decree. The case does not enlighten us as to the manner in which the withdrawal of consent must be made in order to be effective. In that case, the natural

parent filed with the court a formal revocation and withdrawal of her consent. This clearly would be sufficient to give the court judicial cognizance of the revocation of consent. It would seem equally clear that if the proceeding has been instituted the natural parent could not effectively withdraw consent simply by an extrajudicial notification to the adoptive parents. Cf. *In re McDonnell's Adoption,* 77 Cal App 2d 805, 176 P2d 778 (1947).

In the instant case the communication of the intent to withdraw consent falls somewhere between the two extremes just described. The Public Welfare Commission's report presents to the court a clear expression of the respondent's intention to withdraw her consent. However, it is a report only of the caseworker's understanding of her conversation with the respondent, and in no sense can it be regarded as the filing of a formal revocation of consent by the respondent to bring it within the principle laid down in *Williams et ux. v. Capparelli,* supra. The question remains, however, as to whether the report of respondent's statement to the caseworker is to be given any legal effect in determining whether the decree of adoption was properly entered. As indicated above, the trial judge was of the opinion that the information in the report cast a duty upon him to give notice to the respondent and afford her an opportunity to contest the adoption.

The Public Welfare Commission need not file a report with the court if it chooses not to do so, ORS 109.310, but if it does the report becomes a part of the record of the adoption proceeding before the court. The report is "for the consideration of the judge before whom the petition for adoption is pending." ORS 109.310 (4). The statute contemplates that the

report should contain, among other things, "information regarding the status of the child," which, we assume, could include information as to whether the natural parent was willing to relinquish control over the child.

■ We do not know whether or not the trial judge had actual knowledge of the contents of the report but such knowledge is not essential because inasmuch as the report becomes a part of the record in the proceeding the court has judicial knowledge of its contents. *Williams v. Wheeler,* 131 Ark 581, 199 SW 898 (1917); *Dillard v. McKnight,* 34 Cal2d 209, 209 P2d 387 (1949); *Craiglow v. Williams,* 45 Cal App 514, 188 P 76 (1920); *Baca v. Catron,* 24 N M 242, 173 P 862 (1917); *In re Whitish,* 47 Wash2d 652, 289 P2d 340 (1955); McCormick on Evidence, § 327; cf. *State ex rel. Harner v. Karpe,* 151 La 585, 92 So 124 (1922).

6. In the instant case, then, the trial court judicially knew that if the report was accurate the respondent was opposed to the adoption of her child. We emphasize the fact that the report indicated an unequivocal withdrawal of consent. Although the trial court was not required to accept as true everything that was stated in the report, it had a clear warning that the respondent may have withdrawn her consent to the adoption, and this was notice of a very material fact because consent was essential to the court's jurisdiction over the matter. *Furgeson v. Jones,* 17 Or 204, 20 P 842 (1888). We agree with the trial judge that under these circumstances the proceeding should not have continued until a citation had been issued to the respondent so that she would have an opportunity to express her objection to the adoption.

Such notice not having been given we must decide

whether the lower court had the power to correct its own error by setting aside the adoption decree. Provision is made in ORS 109.380 for the reversal of an adoption decree under certain circumstances. This section provides as follows:

> "A parent who before the hearing upon a petition for the adoption of his child, has not had personal notice thereof, may, at any time within one year after actual notice, apply to the circuit court to reverse the decree; which court, after due notice, may in its discretion reverse the decree if it appears that any of the material allegations in the petition were not true." ORS 109.380.

Although the respondent's motion does not expressly refer to this section, it is quite apparent that she relied upon it in seeking relief.

The petitioners contend that the conditions of ORS 109.380 have not been complied with in this case because the respondent had actual knowledge of the pending adoption proceeding at least two months before the decree was signed, and further that all of the material allegations in the petition were true. We do not deem it necessary to determine whether ORS 109.380 was available to the respondent in this case because there is another source of the trial court's power to set aside the decree.

The decree of adoption was entered on January 30, 1956. The motion to reopen the proceeding and to set aside the decree was filed on February 15, 1956, which was during the same term of court in which the decree was entered. ORS 4.150.

■ In dealing with adoption matters the circuit court, although a court of general jurisdiction, has only such powers as are conferred upon it by statute or which can be regarded as inherent in a court of record.

*Furgeson v. Jones,* 17 Or 204, 20 P 842 (1888); *Zipper v. Zipper,* 192 Or 568, 235 P2d 866 (1951).

■ A court of general jurisdiction has the inherent power to modify or set aside its own decree within the same term of court. Black, Judgments (2d ed) § 297; Freeman, Judgments (5th ed) §§ 140, 157, 208; *Harris v. Harris,* 192 Or 361, 232 P2d 818 (1951); *Seufert v. Stadelman,* 178 Or 646, 167 P2d 936 (1946). It has been held in many cases that a court of general jurisdiction in exercising special powers conferred upon it by statute to deal with matters such as divorce, child custody and adoption also has the inherent power to modify or set aside within the same term a decree made under such special powers. *Shivers v. Shivers,* 206 Ga 552, 57 SE2d 660 (1950); *Dover v. Dover,* 205 Ga 241, 53 SE2d 492 (1949); *Pratt v. Pratt,* 342 Ill App 513, 97 NE2d 132 (1951); *State ex rel Bradshaw v. Probate Court of Marion County,* 225 Ind 268, 73 NE2d 769 (1947); *Smith v. Smith,* 171 Kan 619, 237 P2d 213 (alternative ground) (1951); *Pegram v. Pegram,* 310 Ky 86, 219 SW2d 772 (1949); *Bussey v. Bussey,* 94 N H 328, 52 A2d 856 (1947); *Dazey v. Dazey,* 265 SW2d 166 (Tex Civ App 1954). See also 157 ALR 6, 22 ALR2d 1312.

■ The holdings in *Zipper v. Zipper,* supra, and *Mitchell v. Oregon, Washington Credit & Collection Bureau,* 188 Or 389, 215 P2d 917 (1950), are not inconsistent with this position. In the Zipper case it was held that in the absence of a statute empowering it to do so the circuit court acting as a divorce court could not set aside a decree entered in a prior term of court. Neither a court of general jurisdiction or of special jurisdiction has the inherent power to set aside decrees entered by it at a prior term of court,

except in unusual circumstances, though such power may be conferred upon it by statute. In the *Mitchell* case, the court involved was a district court, which is neither a court of general jurisdiction nor a court of record.

We hold, therefore, that no statute is necessary to invest a court of general jurisdiction with the power to correct its own decree entered in the same term, whether such court is acting in the course of the common law or pursuant to special powers conferred upon it by statute.

It may be noted in passing that had the respondent based her motion upon ORS 18.160, it is likely that she could have established to the satisfaction of the trial judge that the decree was entered as a result of her excusable neglect. The additional power to vacate or modify decrees conferred upon the courts by that statute is available in the special statutory proceedings of the circuit court, such as divorce, as well as in cases where it is exercising its general jurisdiction. *Carmichael v. Carmichael,* 101 Or 172, 199 P 385 (1921); *Evans v. Evans,* 60 Or 195, 118 P 177 (1911).

The trial judge indicated that although there was a serious question as to the advisability of removing the child from the control of the petitioners, it was not within his discretion to preclude the natural mother from assuming control. There is authority for the proposition that prior to the entry of the decree the natural parent has an absolute right to withdraw consent. *Wheeler v. Howard,* 211 Ga 596, 87 SE2d 377 (1955); *In re Thompson's Adoption,* 178 Kan 127, 283 P2d 493 (1955); *Boyed v. Wilson,* 258 SW2d 223 (Tex Civ App 1953); see generally 138 ALR 1038, 156 ALR 1011.

■ According to the better view however, the right to revoke consent is not absolute. *Driggers v. Jolley,* 219 S C 31, 64 SE2d 19 (1951); 30 St. John's L Rev 75, 79 (1955).

As pointed out in *Williams et ux. v. Capparelli,* supra, in determining whether the natural parent is to be allowed to resume control of the child after consent is withdrawn, courts have recognized that

> "* * * a variety of other matters must be taken into consideration, as, for example, the circumstances under which the consent was given; the length of time elapsing, and the conduct of the parties, between the giving of consent and the attempted withdrawal; whether or not the withdrawal of consent was made before or after the institution of adoption proceedings; the nature of the natural parent's conduct with respect to the child both before and after consenting to its adoption; and the 'vested rights' of the proposed adoptive parents with respect to the child. In some cases, courts have considered the relative abilities of the adoptive parents * * * to rear the child in the manner best suited to its normal development, and other circumstances indicative of what the best interest of the child require." 180 Or 41, 45, 46, 175 P2d 153, 155.

■ In exercising its discretion the trial court is to be guided by the principle that the child's welfare overrides all other considerations. *In re Hayes' Estate,* 161 Or 1, 32, 86 P2d 424, 87 P2d 766 (1939), reversed on other grounds sub nom, *Pearson v. McGraw,* 308 US 313 (1939), 60 SC 211, 84 LE 293; *Bailey v. Mars,* 138 Conn 593, 87 A2d 388 (1952); *Rhodes v. Shirley,* 234 Ind 587, 129 NE2d 60 (1955); *Driggers v. Jolley,* supra; 9 Vand L Rev 396, 397-8, N. 11 (1956). Since the child's welfare is of primary concern, we are of the opinion that the natural parent may, under certain

circumstances, be estopped to withdraw consent to the adoption. To the extent that *Williams v. Capparelli,* supra, may be regarded as stating a contrary view, it must be modified to comport with the principle we now express.

■ In the present case, if the trial judge had felt that he had the power to reject the respondent's withdrawal of consent it is possible that he would have found that the child should have been left with the petitioners. This being so, we deem it advisable to remand the case to the lower court for the purpose of determining whether the circumstances are such that the respondent is estopped from withdrawing her consent.

The case is therefore remanded to the lower court with direction to make such determination and enter the appropriate decree. Neither party shall recover costs.