Argued November 21, 1974, affirmed January 14, 1975

IN THE MATTER OF THE ADOPTION OF BABY GIRL
ANDREWS, aka SHONA ROSE ANDREWS.
SMALL ET UX, *Appellants* (No. A23781) *v.*
ANDREWS, *Respondent.*
530 P2d 540

*Franklyn N. Brown,* Tigard, argued the cause and filed the briefs for appellants.

*Kenneth W. Saxon,* Portland, argued the cause for respondent. With him on the brief was Michael H. Marcus, Portland.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

LANGTRY, J.

Petitioners have appealed from an order of the circuit court disallowing their petition for the adoption of Shona Andrews, born June 1, 1972 in Edmonton, Alberta. That petition—initially filed on November 16, 1973—included as an attachment a handwritten consent to the adoption dated July 3, 1973 and signed by the child's natural, unwed mother in Edmonton. The circuit court on February 1, 1974 received by mail from the Supreme Court of Alberta a document entitled "Writ of Habeas Corpus," dated January 16, 1974,

ordering the return of the child to that province, as well as a formal written withdrawal of the consent to adoption, dated January 29, 1974, signed by the mother. On February 13, 1974, pursuant to petitioners' motion of the same date, the circuit court issued an order requiring appearance by the natural mother on April 30, 1974 to show cause why the adoption petition should not be granted. At the request of her retained counsel the adoption hearing was ultimately held on July 12. After hearing evidence concerning the circumstances of the consent and subsequent events and considering the report of the Oregon Children's Services Division (ORS 109.310 (3) and (4)), the circuit court concluded that it was inclined, on the facts presented, to find that an estoppel of the natural mother's attempted withdrawal of consent had been established, but stated it was compelled to deny the petition on the basis of the most recent controlling appellate case on the subject, *Franklin v. Biggs,* 14 Or App 450, 513 P2d 1216, Sup Ct *review denied* (1973).

■ Apart from specific statutory exceptions (ORS 109.314 to 109.329) the consent of parents, guardian or other person in loco parentis has been made a jurisdictional prerequisite to the entry of any adoption decree (ORS 109.312) in this state; action taken in the absence of the necessary consent is "a nullity, not voidable but void * * *." *Furgeson v. Jones,* 17 Or 204, 219, 20 P 842, 11 Am St R 808, 3 LRA 620 (1888); *Hughes v. Aetna Casualty Co.,* 234 Or 426, 383 P2d 55 (1963); *In Re Estate of Meyers,* 197 Or 520, 532, 254 P2d 227 (1953).

At the time of the proceeding below, ORS 109.326 provided essentially that, where the child to be adopted was illegitimate, only the consent of the natural mother

would be required, with the natural father being "disregarded just as if he were dead * * *." The circuit court apparently relied on this statute in declining to require notification to or consent from the natural father whose identity became known in the course of these proceedings.

In *Franklin v. Biggs,* supra, we suggested by way of a footnote that the United States Supreme Court's decision in *Stanley v. Illinois,* 405 US 645, 92 S Ct 1208, 31 L Ed 2d 551 (1972), might have placed the constitutionality of ORS 109.326 in some question. On October 15, 1974 the statute was held to be "constitutionally null and void and, hence, unenforceable" by the United States Court of Appeals for the Ninth Circuit which specifically relied upon the *Stanley* decision. The court there said:

> "This appeal challenges the validity of an Oregon statute, ORS 109.326 (1). In effect, the statute permits the adoption of a child born out of wedlock upon the consent of the natural mother, without notice to, or the consent of, the natural father.
> "* * * * * *
> "At the oral argument of the cause in this court, conducted on October 8, 1974, the Solicitor General of the State of Oregon conceded, in effect, that the state statute in question was out of harmony with the Federal Constitution. Pursuant to that concession, and upon the authority of Stanley v. Illinois, 405 U.S. 645, 92 S. Ct. 1208, 31 L.Ed.2d 551 (1972), and Bailey v. Patterson, 369 U.S. 31, 82 S. Ct. 549, 7 L.Ed.2d 512 (1962), it is hereby adjudged and declared that the application of the statute in question would infringe upon the Federal constitutional rights of the appellant and all natural fathers similarly situated. We further declare that the said statute is constitutionally null and void and, hence, unenforceable * * *." Miller v. Miller, 504 F2d 1067, 1068 (9th Cir 1974).

■ Although the circuit court's failure to take steps calculated to notify the natural father once his identity was known would thus appear to constitute an adequate ground for sustaining the denial of the adoption decree, the presence of some evidence indicating that the consent of the father in this case might ultimately be dispensed with⓵ requires us to proceed with a consideration of the specific question regarded as determinative by the circuit court—the revocability of the natural mother's consent of July 3, 1973.

Ms. Andrews—an unwed, unemployed 18-year-old at the time—surrendered her one-year-old daughter to Mr. Small's mother—Jesse Small—in Edmonton the day after signing the written consent introduced by petitioners. Jesse Small proceeded with the child to California, where she turned the child over to the petitioners, her son and daughter-in-law. After reflecting upon her action, Ms. Andrews felt that she had made a mistake and wished to be reunited with her daughter. She then contacted Jesse Small at her home in Portland

---

⓵ ORS 109.324 provides:

"If either parent is believed to have wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child for one year next preceding the filing of the petition for adoption and such parent does not consent in writing to the adoption, there shall be served upon such parent a citation in accordance with ORS 109.330 to show cause why the adoption of the child should not be decreed. Upon hearing being had, if the court finds that such parent has wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child for one year next preceding the filing of the petition for adoption, the consent of such parent at the discretion of the court is not required and, if the court determines that such consent is not required, the court shall have authority to proceed regardless of the objection of such parent."

It appears from the record that the father's rights in this case, regardless of whatever else they may be, could well be forfeit under this statute.

to communicate this change of heart no later than two to three weeks after the petitioners had acquired custody of the child, that is, toward the end of July 1973. On the day following her conversation with Jesse Small, Ms. Andrews also telephoned the petitioners in California in order to make them aware of the change. She testified that she was told when she made her telephone call that the child would be returned only if she would either pay the expenses to be incurred in transporting the child to Edmonton, or travel to California herself in order to take custody there. Being without the resources to take advantage of either of these options, Ms. Andrews then contacted the Department of Human Resources and Welfare in Edmonton which aided her in her efforts to regain the child's custody, resulting, among other things, in providing her with legal assistance. A welfare caseworker from Alberta called upon petitioners in person in California on September 9, 1973, seeking to have them return the child, but they refused. Petitioners moved to Portland in the late summer of 1973 without having initiated adoption proceedings in California and without notifying Ms. Andrews.

Having been apprised of these facts, as well as many more which included the circumstances of the concerned parties, the circuit court found:

"* * * The official retraction was January 29, 1974, and that is well short of a year. The acknowledgement [sic] is that there was an indication within a matter of less than a month after consent was given and throughout the late summer, fall, and winter and prior to the filing of the formal retraction other indications of retraction had been given from time to time, and efforts to implement, on the part of this 19-year old girl, an effective, legal retraction

were made through her lawyer and through telephone calls and communications."

There was no evidence showing misconduct, neglect or mistreatment on the part of Ms. Andrews during the year she had cared for her daughter preceding transfer of the child to the petitioners.

Until the Supreme Court's decision in *Williams et ux v. Capparelli,* 180 Or 41, 175 P2d 153 (1946), it appears that a natural parent in Oregon was absolutely entitled to withdraw his or her consent to an adoption at any time prior to the entry of a decree.

In *Williams* the court said:

"* * * [A] natural parent who has consented to the adoption of a child in compliance with a statute which makes such consent a prerequisite to adoption may effectively withdraw or revoke his consent at any time before the court has made a decree of adoption." 180 Or at 45.

Included in its decision was the additional observation that recent "interesting and persuasive" decisions then "contrary to what we conceive to be the weight of authority * * *" had applied the doctrine of equitable estoppel in denying the right of a parent to withdraw consent. Specific note was made of those matters taken into consideration by courts invoking the doctrine:

"* * * [T]he circumstances under which the consent was given; the length of time elapsing, and the conduct of the parties, between the giving of consent and the attempted withdrawal; whether or not the withdrawal of consent was made before or after the institution of adoption proceedings; the nature of the natural parent's conduct with respect to the child both before and after consenting to its adoption; and the 'vested rights' of the proposed adoptive parents with respect to the child. In some cases, courts have considered the relative

abilities of the adoptive parents and of the natural parents to rear the child in the manner best suited to its normal development, and other circumstances indicative of what the best interests of the child require. * * * *Nevertheless, it would seem that courts should not interfere with the natural relationship of parent and child upon the sole ground that the proposed adoptive parents are able to give the child superior advantages over those within the means or social status of the natural parents * * * .*" (Emphasis supplied.) 180 Or at 45-46.

Citing *Williams* as standing for the rule that *"in the absence of an estoppel* the natural parent may withdraw his consent to adoption at any time before the entry of the decree * * *"* (emphasis supplied) (216 Or at 192), the court concluded in *Dugger et ux v. Lauless,* 216 Or 188, 338 P2d 660 (1959), that, while some authorities continued to characterize the predecree right to withdraw consent as one without limitation, "[a]ccording to the better view * * * the right to revoke consent is not absolute * * *." 216 Or at 198. Reference to the matters to be considered in determining whether a natural parent ought to be allowed to resume control of a child after the withdrawal of consent which it had noted as relevant (quoted supra) in *Williams* was then followed with the comment:

"In exercising its discretion the trial court is to be guided by the principle that the child's welfare overrides all other considerations. * * * Since the child's welfare is of primary concern, we are of the opinion that the natural parent may, under certain circumstances, be estopped to withdraw consent to the adoption * * *." 216 Or at 198-99.

■ Petitioners rely specifically on this language in arguing that the trial court erred when it held the

natural mother's withdrawal of consent to be effective despite its opinion that

> "* * * the Smalls have a most substantial advantage in their capability of rearing the child over the biological mother.
>
> "* * * * *.
>
> "* * * [C]learly the best interests of the child would be for the child to remain with Mr. and Mrs. Small."

The basis of this argument is that the "best interests" of the child—as ascertained by the trial court—should determine whether a natural parent will be permitted to foreclose an adoption to which consent has previously been given. The Supreme Court's decision in *Dugger* has never been so interpreted. In the absence of any additional grounds for an "estoppel"—considering those matters outlined in both *Dugger* and *Williams*—a more "acceptable" economic or emotional environment has never been approved as an adequate basis for the termination of parental rights which an adoption over the objections of a natural parent represents. The "best interests" rule has consistently been tempered by the refinement that

> "* * * courts should not interfere with the natural relationship of parent and child upon the sole ground that the proposed adoptive parents are able to give the child superior advantages over those within the means or social status of the natural parents * * *." 180 Or at 46.

*See also State v. McMaster,* 259 Or 291, 486 P2d 567 (1971); *Strobel v. Garrison,* 255 Or 16, 459 P2d 1001, 464 P2d 688 (1969); *Hessner et ux v. Bilyeu,* 210 Or 266, 268, 310 P2d 305 (1957); and *Franklin v. Biggs,* supra. The decision below thus appears to be in harmony with the present state of the law in Oregon.

■ Where, as here, a natural mother not represented by legal counsel at the time consent is given attempts to withdraw that consent within a few weeks and thereafter takes reasonable steps available to regain the custody of her child, neither so-called "vested rights" nor superior economic or social position of the proposed adoptive parents will serve to deprive that withdrawal of legal effect.

The hardships produced by a separation of the child and the petitioners at this time are in substantial measure the result of the petitioners' resistance to the natural mother's efforts to regain custody. Those hoping to become adoptive parents cannot create their best argument for keeping a child's custody by thwarting a natural parent's known wishes.[2]

■ It is argued that unless consents like that in this case are consistently treated as irrevocable contracts the successful placement of children in adoptive homes will be seriously inhibited. This argument is unpersuasive because (1) our decision has no impact where a child is surrendered to a child-caring agency or placed with an agency subsequent to the termination of parental rights, and (2) discontent with adoption laws must necessarily be directed to the legislative branch which has

> "* * * exercised its power to authorize and regulate the adoption of children. Since the legislature has enacted statutes prescribing how adop-

---

[2] In giving primacy to the application of this principle in the circumstances at bar we have weighed it against another principle we subscribed to in State v. Blum, 1 Or App 409, 416, 463 P2d 367 (1970), to the effect that a main consideration in determining what is in the best interests of the child is the child's early need to become permanently integrated into a family. This latter principle should not be considered as having been diminished by application of the former. The decision here is close.

tions shall be accomplished, this court has no power to change in any particular the law as expressed in those statutes * * *.

"* * * If social changes since 1919 have created a need for revision of the adoption code, such revision is the responsibility of the legislature." *Strobel v. Garrison,* supra, 255 Or at 32.

The court's decision in *Strobel* did, in fact, result in a modification of the law with respect to adoptions effected through child-caring agencies (ORS 418.270). The legislature has conspicuously declined, however, to make comparable changes where adoptions are privately arranged. The law in this respect today remains as it was when *Dugger* and its progeny were decided.[9]

Affirmed.

---

[9] In Smith v. Green, 4 Or App 533, 480 P2d 437 (1971), we noted that, where enforcement is not inconsistent with any public policy considerations, a contract (*e.g.,* consent to an adoption) entered into in a foreign state will be enforced if valid under the law of that state. Consideration of supplementary briefs concerning the Canadian (and specifically Alberta) law relative to the withdrawal of a consent such as that made by Ms. Andrews leads us to conclude that there, as here, absent grounds for invoking an estoppel, a consent to an adoption may be withdrawn any time prior to the entry of a decree.