In the Matter of the Adoption of D.
H. and H., *Appellants,*
*v.*
O. and W., *Respondents.*
(No. 2450, CA 7076)

561 P2d 1038

John D. Peterson, Hillsboro, argued the cause for

appellants. With him on the brief was Brink, Moore, Brink & Peterson, Hillsboro.

Daniel G. Hoar, Hillsboro, argued the cause for respondents. With him on the brief was Oregon Legal Services Corporation, Regional Office, Hillsboro.

Before Schwab, Chief Judge, and Thornton and Johnson, Judges.

THORNTON, J.

## THORNTON, J.

Petitioners appeal from an order of the circuit court denying their petition for adoption of D., born July 29, 1975.

The issue before the trial court and on this appeal is whether the natural parents are estopped from revoking their consent to adoption.

The parents of the child, who were not married, voluntarily executed consents to adoption on April 6, 1976, and offered the child for adoption by petitioners, with whom they became familiar when the father of the child worked for petitioners' family plumbing business. On May 16, 1976, about six weeks after the consent for adoption was executed, the mother attempted to regain custody of her son directly from the petitioners. After that attempt failed she consulted Legal Aid, which filed a Revocation of Consent to Adoption on her behalf on May 21, 1976. That document, along with the father's subsequent revocation, is the basis for the denial of the petition.

■ With certain statutory exceptions, consent of both parents of the child to be adopted is a jurisdictional prerequisite to adoption. ORS 109.312. A natural parent who has consented to adoption may revoke consent at any time before the court has issued a decree of adoption unless circumstances indicate that the parent should be estopped to revoke the consent. *Dugger et ux v. Lauless,* 216 Or 188, 338 P2d 660 (1959); *Williams et ux. v. Capparelli,* 180 Or 41, 175 P2d 153 (1946); *Small v. Andrews,* 20 Or App 6, 530 P2d 540 (1975).

■■ In determining whether the natural parent may revoke a consent, a variety of considerations is to be examined, including

"* * * the circumstances under which consent was given; the length of time elapsing, and the conduct of the parties, between the giving of consent and the attempted withdrawal; whether or not the withdrawal of consent

[ 889 ]

was made before or after the institution of adoption proceedings; the nature of the natural parent's conduct with respect to the child both before and after consenting to its adoption; and the 'vested rights' of the proposed adoptive parents with respect to the child. * * *" *Williams et ux. v. Capparelli, supra,* 180 Or at 45-46; *Dugger et ux v. Lauless, supra.*

While the best interests of the child are of primary concern,

"* * * courts should not interfere with the natural relationship of parent and child upon the sole ground that the proposed adoptive parents are able to give the child superior advantages over those within the means or social status of the natural parents. * * *" *Williams et ux. v. Capparelli, supra* at 46. *See also, Small v. Andrews, supra.*

■ We agree with the trial court's determination that the circumstances of this case are insufficient to establish an estoppel. Here, as in *Small v. Andrews, supra,* the attempt to withdraw the consent was within a few weeks after consent was executed. The testimony established that both parties loved and cared for the child while he was in their respective custody. There was testimony on behalf of petitioners that the child had a severe rash at the time of the transfer of custody, apparently indicating neglect, but this fact lost its probative force when the child's paternal grandmother testified that all of her seven children and four grandchildren had exhibited an eczema-like rash that she described as a "genetic skin condition." On appeal petitioners rely heavily on the fact that the mother had been convicted of burglary and shoplifting. These criminal convictions were, however, prior to the birth of the child.

Affirmed.